PEOPLE v ALPHUS HARRIS

1. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES—IMPEACH-MENT—STATUTES.

Res gestae witnesses, indorsed on the information, may be impeached the same as though such witnesses had been called by the defendant (MCLA 767.40a).

2. WITNESSES—CRIMINAL LAW—IMPEACHMENT—DEMEANOR OF WIT-NESSES—PREJUDICE—JUDGES—COMMENTS.

Rulings of a trial judge that one witness was "reluctant" and another "hostile" prior to permitting them to be impeached were unnecessary; but where only such rulings would satisfy defendant's trial counsel, the rulings are considered to be alternative reasons for allowing impeachment and not prejudicial comment on what the jury also observed about the demeanor of the witnesses.

3. WITNESSES—CRIMINAL LAW—PRIOR INCONSISTENT STATEMENTS—IM-PEACHMENT—JURY QUESTION.

A jury can discredit a witness because he failed to include in a narrative of an event, soon after it happened, something impor-

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur, Witnesses § 674 *et seq.*
[2] 58 Am Jur, Witnesses § 708.
[3, 9] 58 Am Jur, Witnesses § 775 *et seq.*
[4, 5] 58 Am Jur, Witnesses §§ 699, 703.
[6–8] 58 Am Jur, Witnesses § 579 *et seq.*
[10] 21 Am Jur 2d, Criminal Law §§ 343, 344.
[11] 53 Am Jur, Trial §§ 471, 474, 488, 489.
[12] 70 Am Jur 2d, Sheriffs, Police, and Constables §§ 178–192.
[13, 14] 58 Am Jur, Witnesses § 734 *et seq.*
[15] 40 Am Jur 2d, Homicide §§ 167, 168.
  Homicide: Extent of premises which may be defended without retreat under right of self-defense. 52 ALR2d 1458.
[16] 58 Am Jur, Witnesses §§ 625, 630.
[17] 21 Am Jur 2d, Criminal Law § 585.
  Court's right, in imposing sentence, to hear evidence of, or to consider, other offenses committed by defendant. 96 ALR2d 768.
[18] 53 Am Jur, Trial § 188.

tant that it would be natural to mention, if true, and, it is for the jury to decide whether a prior statement is materially inconsistent and what effect, if any, it has upon the believability of the testimony of that witness; therefore, a witness who testified that the deceased picked up a knife and came at defendant could be impeached by his prior statement in which he told of the fight and shooting and in which he never mentioned the knife that he placed in the decedent's hand by his trial testimony.

4. WITNESSES—CRIMINAL LAW—LACK OF MEMORY—USE OF PRIOR STATEMENTS—PROOFS.

Denial or lack of memory of a prior statement by a witness in a criminal trial does not prohibit its use; rather, that is the foundation for extrinsic proof of it.

5. WITNESSES—CRIMINAL LAW—SELECTIVE MEMORY—LACK OF MEMORY—IMPEACHMENT—PRIOR INCONSISTENT STATEMENTS.

Selective memory does not call into play the rule that a witness in a criminal trial who states that he does not remember cannot be impeached by the showing of former statements regarding the facts which he claims not to have remembered, because that rule applies only when the witness has such a lack of memory about the event that his testimony is not a version of what occurred; if a witness is going to "stonewall it" by claiming a lack of memory, he must do so all the way so that his testimony is not a version of the happening that is inconsistent with the more complete and more damaging prior statement.

6. WITNESSES—REFRESHING MEMORY—WRITINGS.

Refreshing the memory of a witness by a writing is obviously "leading", but permissibly so because the witness is led not by suggestions from the mind and lips of an attorney but by his own earlier recorded recollection of the event.

7. WITNESSES—REFRESHING MEMORY—DISCRETION.

The refreshing of a witness's memory is a matter resting largely in the discretion of the trial court.

8. WITNESSES—REFRESHING MEMORY—PRIOR STATEMENTS—SUBSTANTIVE EVIDENCE—INCONSISTENT STATEMENTS—CREDIBILITY—TRIAL—PURPOSES OF TRIAL.

The purpose of a trial is to ascertain the truth and if a witness does not recollect, or is not certain, or if the examiner is aware that the witness has omitted or misstated a detail, the judge may allow the witness to refresh his memory from a statement

made when his memory was fresh; if the witness adopts as true the facts contained in the prior statement, it becomes substantive evidence, and if the witness does not accept the earlier statement, the jury should be aware of the inconsistency in order to assess the value of the witness's testimony.

9. WITNESSES—PRIOR STATEMENTS—ADOPTION OF PRIOR STATEMENTS—CREDIBILITY—EVIDENCE.

Prior statements of a witness, unless adopted by the witness, can be considered only for the limited purpose of assessing the credibility of the witness and cannot be considered as evidence of the truth of the fact stated out of court.

10. CRIMINAL LAW—PROSECUTOR'S ARGUMENT—WITNESSES—PRIOR STATEMENTS—ADOPTION OF PRIOR STATEMENTS—INSTRUCTIONS TO JURY—CURATIVE INSTRUCTIONS.

Reference by the prosecutor in his argument to prior statements of witnesses as the truth although the witnesses had not adopted that part of their statements is reversible error only when a curative instruction to the jury is requested by the defendant and refused.

11. WITNESSES—PRIOR STATEMENTS—PRESENTMENT AT TRIAL—SUBSTANTIVE EVIDENCE—CONSTITUTIONAL LAW.

There is no constitutional violation when a prior statement of a witness presented at trial is used as substantive evidence.

12. CRIMINAL LAW—EVIDENCE—POLICE REPORTS—NOTES—CASE PRECEDENT—RETROACTIVE APPLICATION.

A Michigan Supreme Court decision that reports of police officers must be accompanied by the fragmentary notes from which each report was prepared if the reports are to be allowed in evidence is not retroactive.

13. EVIDENCE—CRIMINAL LAW—WITNESSES—PRIOR CONVICTIONS—FELONY CONVICTIONS—MISDEMEANOR CONVICTIONS—CREDIBILITY—IMPEACHMENT.

Evidence of a prior criminal felony conviction of a witness may be introduced for the purpose of discrediting the witness, but municipal ordinance or misdemeanor convictions may not be used by the prosecution solely for impeachment purposes.

14. WITNESSES—CRIMINAL LAW—PRIOR CONVICTIONS—FELONY CONVICTIONS—MISDEMEANOR CONVICTIONS—IMPEACHMENT—OBJECTION—STATUTES.

Impeachment of a witness who admitted he was convicted of "joyriding", which could be either a circuit court misdemeanor

or a felony, and "failure to register a pistol", which is almost always a plea-bargain reduction of a firearm felony to a misdemeanor, did not result in reversible error where there is nothing in the record to indicate where, when, or how those convictions were obtained or even what law was violated, and where there was no objection by defense counsel to the impeachment of the witness (MCLA 750.413, 750.414).

15. Homicide—Defenses—Self-Defense—Retreat—Homes—Dwellings—Apartment Buildings—Common Passageways—Instructions to Jury.

A defendant who lived in an apartment on the first floor of an apartment house who allegedly shot and killed the victim in an apartment on the second floor or, possibly, in the hallway in front of that second-floor apartment is not entitled to an instruction that he need not retreat if assaulted in his own home; the common passageways of an apartment building in which the defendant resides, or another apartment in the same building are not areas to which the no-retreat rule applies, especially if the victim also had the right to use the common area or the other apartment.

16. Witnesses—Criminal Law—Cross-Examination—Credibility—Fictitious Names—Lack of Memory—Impeachment.

A purpose of cross-examination is to probe the credibility of a witness and it was not improper questioning by the prosecutor of a defendant who took the stand to cross-examine on aliases used by the defendant where it was brought out that the defendant had used a fictitious name at two places of recent employment and that the defendant could not remember what name he had used; these matters are probative of untruthfulness and of a defective memory.

17. Criminal Law—Sentences—Prior Convictions—Validity of Prior Convictions—Appeal and Error—Remand for Resentencing.

The Court of Appeals will not remand for resentencing of the defendant because the sentencing judge allegedly considered a prior conviction where no showing was made that the judge considered a prior invalid conviction; and resentence is not indicated because the judge asked defendant, before sentencing, about an arrest while on parole and learned that defendant was released without being charged.

18. Criminal Law—Constitutional Law—Trial—Conferences—Defendant's Presence—Questions of Law—Questions of Procedure.

There is no constitutional reason why, in a criminal trial, counsel

and the court cannot confer about a question of law or procedure in the absence of the defendant.

Appeal from Recorder's Court of Detroit, Thomas L. Poindexter, J. Submitted Division 1 June 13, 1974, at Detroit. (Docket No. 14722.) Decided November 25, 1974.

Alphus Harris was convicted of second-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney—Research, Training & Appeals, and *Thomas A. Ziolkowski,* Assistant Prosecuting Attorney, for the people.

*David A. Goldstein,* Deputy State Appellate Defender, for defendant.

Before: J. H. GILLIS, P. J., and ALLEN and ELLIOTT,* JJ.

ELLIOTT, J. After arguing over a $15.00 debt, defendant killed Curtis Johnson in an apartment shared by defendant's brother, Fred Harris, and Christine Johnson, sister of the deceased. There was sufficient evidence for the jury to find that defendant kicked open the door and pursued deceased into a bathroom where he shot him twice as the deceased, unarmed, pleaded for his life. There was also evidence to support defendant's claim of self-defense, that the deceased was advancing with a knife when defendant gunned him down.

The jury needed all of the information it could

---

* Circuit judge, sitting on the Court of Appeals by assignment.

get to evaluate the conflicting testimony of the friends and relatives of the deceased or of the defendant who witnessed the shooting. They gave statements to the police soon after the gunfire. Six of the thirteen questions presented concern use of these prior statements. We consider them in the first six sections of this opinion.

## I.

Both the trial judge and defense counsel shared a mistaken idea that res gestae witnesses, endorsed on this information, could not be impeached unless hostility to the prosecutor was shown. This is not the law; *People v Bruno,* 30 Mich App 375; 186 NW2d 339 (1971); *People v Foster,* 33 Mich App 291; 189 NW2d 821 (1971); *People v Hood,* 37 Mich App 195; 194 NW2d 472 (1971); *People v Coates,* 40 Mich App 212; 198 NW2d 837 (1972). MCLA 767.40a; MSA 28.980 (1) accords with the common law. The prohibition against impeaching one's own witness never applied to a witness that a party is required to call, as for example, "where the prosecution is by statute under a duty to call all witnesses whose names are endorsed on the indictment"; Morgan, Basic Problems of Evidence, pp 63, 64. Professor Morgan agrees with Professor McCormick that "the rule against the showing of the prior statements of one's own witness, to aid in evaluating his testimony, is a serious obstruction to the ascertainment of truth"; McCormick, Law of Evidence, § 38, p 73.

Both of these eminent commentators have long supported the purpose of proposed Federal Rules of Evidence, Rule 607: "The credibility of a witness may be attacked by any party, including the party calling him". A comment on a similar provision in

California Evidence Code, § 785, says (citations omitted):

"Section 785 eliminates the present restriction on attacking the credibility of one's own witness. Under the existing law, a party is precluded from attacking the credibility of his own witness unless he has been surprised and damaged by the witness' testimony. * * * In large part, the present law rests upon the theory that a party producing a witness is bound by his testimony. * * * This theory has long been abandoned in several jurisdictions where the practical exigencies of litigation have been recognized. * * * A party has no actual control over a person who witnesses an event and is required to testify to aid the trier of fact in its function of determining the truth. Hence, a party should not be 'bound' by the testimony of a witness produced by him and should be permitted to attack the credibility of the witness without anachronistic limitations. Denial of the right to attack credibility may often work a hardship on a party where by necessity he must call a hostile witness. Expanded opportunity for testing credibility is in keeping with the interest of providing a forum for full and free disclosure."

It is high time that Michigan permit any party to impeach any witness at least by allowing the jury to know of his prior self-contradictions. However, because the claims of error concern only endorsed res gestae witnesses, it is unecessary to so rule in this case.

One of the claims of error is that rulings of the trial judge that one witness was "reluctant" and another "hostile" prior to permitting them to be impeached, were unnecessary and prejudicial comments on the evidence. Although we agree with defendant's appellate counsel that it was unnecessary to so rule, only such a ruling would satisfy defendant's trial counsel. We consider the rulings to be alternative reasons for allowing impeach-

ment and not prejudicial comment on what the jury also observed about the demeanor of the witnesses.

## II.

A witness who testified that the deceased picked up a knife and came at defendant was impeached by his prior statement in which he told of the fight and shooting and in which he never mentioned the knife that he placed in the decedent's hand by his trial testimony. A jury can discredit a witness because he failed to include in a narrative of an event, soon after it happened, something important that it would be natural to mention, if true; see McCormick, *supra*, § 34, p 64. It is for the jury to decide whether a prior statement is materially inconsistent and what effect, if any, it has upon the believability of the testimony of that witness.

## III.

A witness claimed to have lost part of his memory. He could remember things about the evening that were favorable to defendant, but he could not remember unfavorable things that he told the police on the night of the shooting. He could remember making the statement and signing it, and he recognized his signature, but he said he could not remember saying some of the things his signed statement contained. Denial, or lack of memory, of a prior statement does not prohibit its use. Rather, that is the foundation for extrinsic proof of it. See *People v Dozier,* 22 Mich App 528; 177 NW2d 694 (1970). Selective memory does not call into play the rule of *People v Durkee,* 369 Mich 618; 120 NW2d 729 (1963). That rule applies only when the witness has such a lack of memory

about the event that his testimony is not a version of what occurred. In other words, if a witness is going to "stonewall it" by claiming a lack of memory, he must do so all the way so that his testimony is not a version of the happening that is inconsistent with the more complete and more damaging prior statement.

## IV.

Christine Johnson's testimony varied from her statement given on the night of the shooting. After reading her statement, to herself, she corrected her testimony to correspond to what she had said earlier. She claimed that the statement "refreshed" her recollection. Refreshing the memory of a witness by a writing is obviously "leading", but permissibly so because she is led not by suggestions from the mind and lips of an attorney but by her own earlier recorded recollection of the event.

"The refreshing of a witness' memory is a matter resting largely in the discretion of the trial court." 98 CJS, Witnesses, § 357, p 80.

The purpose of a trial is to ascertain the truth. If the witness does not recollect, or is not certain, or if the examiner is aware that the witness has omitted or misstated a detail, the judge may allow the witness to refresh her memory from a statement made when memory was fresh. We fully agree with and rely on the quotation from 5 Jones, Blue Book of Evidence, in *Hileman v Indreica,* 385 Mich 1, 7, 8; 187 NW2d 411, 412, 413 (1971).

If the witness adopts as true the facts contained in the prior statement, it becomes substantive evidence; *People v Couch,* 49 Mich App 69; 211

NW2d 250 (1973). And if the witness does not accept the earlier statement, the jury should be aware of the inconsistency in order to assess the value of the witness' testimony; see heading I., *supra.*

## V.

The prosecutor's argument referred to prior statements of witnesses as the truth although the witnesses had not adopted that part of their statements. Defense counsel did not object and he did not request a curative instruction. Very properly, the judge instructed the jury, *sua sponte,* that prior statements, unless adopted by the witness, could be considered only for the limited purpose of assessing the credibility of the witness and could not be considered as evidence of the truth of the fact stated out of court. Reversal is required only when a curative instruction is requested and refused; *People v Coates, supra.*

We wish to point out that, despite earlier contrary expressions in Michigan decisions, the United States Supreme Court has determined in *California v Green,* 399 US 149; 90 S Ct 1930; 26 L Ed 2d 489 (1970), that there is no constitutional violation when the prior statement of a witness presented at trial is used as substantive evidence as urged by Wigmore and McCormick.

## VI.

Finally, with respect to prior statements, an officer was called to prove a prior statement of a witness who did not remember making it. The officer had written a report stating what the witness had uttered at the scene of the shooting. He was allowed to read that report aloud as his re-

freshed recollection. No doubt defendant's appellate counsel is correct that he was really giving the jury his "past recollection recorded". However, the report met the requirements of the "past recollection recorded" exception to the hearsay rule then in effect. The trial was before *People v Rosborough,* 387 Mich 183; 195 NW2d 255 (1972). *Rosborough's* contribution to the law of evidence, that police fragmentary notes must be produced, is not retroactive; *People v Banks,* 50 Mich App 622; 213 NW2d 817 (1973).

## VII.

During the examination of the witness with the peculiar memory, the prosecutor brought out his conviction of crimes:

"*Q.* Mr. Baldwin, have you ever been arrested and convicted of any crime?

"*A.* I have been arrested.

"*Q.* And convicted?

"*A.* What do you mean when you say convicted—sent up?

"*Q.* Found guilty or pled guilty?

"*A.* I have been found guilty.

"*Q.* Of what crime or crimes?

"*A.* Unlawful failure to register pistol.

"*Q.* Failure to register a pistol?

"*A.* Uh—huh—and I was joyriding.

"*Q.* You were found guilty of joyriding—that's a conviction for joyriding?

"*A.* Yes."

There was no objection to these questions. "Joyriding" could be either a circuit court misdemeanor, MCLA 750.414; MSA 28.646, or a felony; MCLA 750.413; MSA 28.645, *People v Stanley,* 349 Mich 362; 84 NW2d 787 (1957). It is difficult to

know what statute or ordinance was violated by a "failure to register a pistol". Such a conviction is almost always a plea-bargain reduction of a firearm felony to a misdemeanor.

"One way of discrediting the witness is to introduce evidence of a prior criminal conviction of that witness. By so doing the cross-examiner intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony. The introduction of evidence of a prior crime is thus a general attack on the credibility of a witness." *Davis v Alaska,* 415 US 308, 316; 94 S Ct 1105, 1110; 39 L Ed 2d 347, 353–354 (1974).

The Michigan Supreme Court has limited such impeachment to convictions of felonies in *People v Renno,* 392 Mich 45, 55; 219 NW2d 422, 425 (1974), which said:

"We do not hesitate in this case to prohibit the further use of municipal ordinance or misdemeanor convictions used by the prosecution *solely for impeachment purposes."*

Presumably this applies to any witness and not only to a defendant, and bars such questions by defense counsel as well as by the prosecutor, but we do not think the rule will apply to civil cases which are governed by GCR 1963, 607. By "further use" the Supreme Court was indicating that its decision is not to be applied retroactively. Under the principles discussed in *People v Hampton,* 384 Mich 669; 187 NW2d 404 (1971), *Renno* should not be applied to this case. Compare the nonretroactivity given the holding in *People v Brocato,* 17 Mich App 277; 169 NW2d 483 (1969), that inquiry into prior arrests not resulting in convictions is im-

proper, by *People v Giacalone,* 52 Mich App 428; 217 NW2d 444 (1974).

## VIII.

Defendant further claims that since constitutionally infirm convictions cannot properly be used to impeach a defendant, *Loper v Beto,* 405 US 473; 31 L Ed 2d 374; 92 S Ct 1014 (1972), they cannot be used to impeach a witness such as Mr. Baldwin who admitted to "joyriding" and "failure to register a pistol". There is nothing in the record to indicate where, when, or how those convictions were obtained or even what law was violated. As we have said, there was no objection by defense counsel to this impeachment of Baldwin.

## IX.

Next, defendant claims he was entitled to an instruction that he need not retreat if assaulted in his own home. There was no such request and there was no objection to the self-defense instruction given. If the shooting occurred in defendant's home, the conflict between *People v Broom,* 50 Mich App 337; 213 NW2d 247 (1973), and *People v Paxton,* 47 Mich App 144; 209 NW2d 251 (1973), would be presented; that is, whether a judge must so instruct in the absence of a request. However, defendant was not in his own home. He lived in an apartment on the first floor of the apartment house. The shooting occurred in an apartment on the second floor, or, possibly, in the hallway in front of that second-floor apartment. The common passageways of an apartment building in which defendant resides, or another apartment in the same building are not areas to which the no-retreat rule applies. This would be especially true

when, as here, the person shot also had a right to use the common area or the other apartment. Compare the excellent opinion in *People v Godsey,* 54 Mich App 316; 220 NW2d 801 (1974).

## X.

Defendant's real name was Alphus Harris but he was generally known as "Bob" to his friends and relatives and the information added "a.k.a. Robert Harris" to his name. Defendant took the stand and admitted his use of "Robert". He was further examined:

"*Q.* Have you ever gone by any other name other than Robert or Alphus Harris?

"*A.* No.

"*Q.* Well, why did you use a different name at the car wash?

"*A.* That's the only time.

"*Q.* Did you use the same name at the Rufus Paint Co.?

"*A.* I guess so.

\*   \*   \*

"*Q.* You mean you can't tell us what name you used at Alvito's car wash?

"*A.* No.

"*Q.* You're positive you didn't use your real name?

"*A.* Right."

Defendant's brief contends:

"Here reference to an alias can be considered evidence of other criminal activity because in the minds of the average juror only persons involved in unlawful behavior need to use an assumed name."

We cannot agree with the contention of defendant. When the defendant takes the stand he puts

his credibility in issue. His use of a fictitious name at two places of employment, which the record shows were recent employments, and his claim that he could not remember what name he had used, are matters that are probative of untruthfulness and of a defective memory. A purpose of cross-examination is to probe the credibility of a witness. It would certainly be an ineffective tool if the questioning above was considered improper.

## XI.

We conclude that the prosecutor's remarks in final argument about the credibility of a witness did not exceed permissible limits. See *People v Couch, supra.*

## XII.

We do not remand for resentence because the sentencing judge considered a prior conviction. No showing was made as required by *People v Moore,* 391 Mich 426; 216 NW2d 770 (1974). Resentence is not indicated because the judge asked defendant, before sentence, about an arrest while on parole and learned that defendant was released without being charged.

## XIII.

The final claim of error is based upon a statement by the judge early in the trial:

"I want to say to all members of the jury that there was a discussion regarding a circumstance of one of the jurors in this case and at this time it appears that that subject or request cannot be followed. It was a discussion among the attorneys in this case and the court in chambers."

The conference was obviously about a question of law or procedure due to a juror's request and the juror was not present at the conference. Both the prosecutor and defense counsel have sworn that they do not remember what it was about. There is no complaint about the selection, supervision, or impartiality of the jury. Neither he nor his attorney complained, at the time, that he was not present, if defendant was absent.

There is no constitutional reason why counsel and the court cannot confer about a question of law or procedure in the absence of the defendant. See the proposed Federal Rules of Criminal Procedure, Rule 43(c)(3).

Counsel commonly ask during a trial to "approach the bench" to discuss something out of the hearing of the jury and, necessarily, out of the hearing of the defendant also. To avoid being overheard, the court and counsel may step into the chambers briefly, but that does not cause automatic reversal where no objection was made and no prejudice is shown. The incident is far more innocent than conferences out of the presence of a defendant in *People v Carroll,* 49 Mich App 44; 211 NW2d 233 (1973), and *People v Plozai,* 50 Mich App 131; 212 NW2d 721 (1973).

Affirmed.

All concurred.