# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 26, 2016

Plaintiff-Appellee,

v

No. 323408
Oakland Circuit Court
LC No. 2003-193604-FC

MICHAEL DAVID VANCE,

Defendant-Appellant.

Before: STEPHENS, P.J., and HOEKSTRA and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right[1] his jury trial convictions of seven counts of first-degree criminal sexual conduct (CSC), MCL 750.520b(1)(a), and three counts of second-degree CSC, MCL 750.520c(1)(a). The trial court sentenced defendant to concurrent prison terms of 15 to 50 years for each first-degree CSC conviction, and 4 to 15 years for each second-degree CSC conviction.[2] We affirm defendant's convictions, but vacate his sentences and remand for resentencing.

## I. FACTS AND PROCEEDINGS

In LC No. 2003-193604-FC, defendant was charged with sexually abusing BK, the then nine-year-old daughter of defendant's former girlfriend, AA, both of whom lived with defendant from July 2000 to July 2001. BK testified at trial that every night over a two-week period, defendant came into her bedroom naked, woke her, and brought her into the bathroom, where he required her to perform fellatio on him. In March 2001, BK wrote her mother a note informing her of the abuse and asking her mother to put a stop to it. AA confronted defendant, who denied

---

[1] Defendant's original appellate counsel failed to file an appeal as of right. After defendant filed a petition for habeas corpus in the federal court, the court found that defendant was denied his right to the effective assistance of appellate counsel and reinstated defendant's appeal by right.

[2] Defendant also was convicted of one count of second-degree CSC in a companion case, No. 2003-192752-FH, which was consolidated with this case for purposes of trial. Defendant has not appealed his conviction in No. 2003-192752-FH, for which he was also sentenced to a prison term of 4 to 15 years.

the allegations. AA installed a lock on the inside of BK's bedroom door, but did not report the allegations to the police. AA and her children left defendant's apartment in July 2001. In 2003, BK told a friend and school counselor about the incidents of abuse, which were then reported to the police.

In LC No. 2003-192752-FH, defendant was charged with one count of second-degree CSC for sexually abusing then nine-year-old KV, the daughter of MV, who dated defendant from July 2002 to September 2002. KV testified that while accompanying defendant on an errand in her mother's car, defendant drove to a park where he made her manually stimulate his penis. KV disclosed the abuse to her mother in February 2003, when she and her mother were discussing why defendant had discontinued his dating relationship with MV.

Over defendant's objection, the two cases were joined for trial. The jury convicted defendant of seven counts of first-degree CSC and three counts of second-degree CSC in the case involving BK, and one count of second-degree CSC in the case involving KV. Defendant now appeals his convictions and sentences only in the case involving BK.

## II. JOINDER OF TRIALS AND ADMISSIBILITY OF EVIDENCE UNDER MRE 404(B)(1)

Defendant argues that the trial court erred in joining the two cases for trial. In a related issue, he argues that the trial court erred in ruling that evidence of defendant's sexual abuse of each child would be admissible under MRE 404(b)(1) if separate trials were held, thereby supporting the joinder of the two cases for trial.

"To determine whether joinder is permissible, a trial court must first find the relevant facts and then must decide whether those facts constitute 'related' offenses for which joinder is appropriate." *People v Williams*, 483 Mich 226, 231; 769 NW2d 605 (2009). The trial court's findings of fact are reviewed for clear error, and its application of the law to the facts is reviewed de novo. *Id.* The trial court's ultimate decision on joinder of offenses is reviewed for an abuse of discretion. *People v Duranseau*, 221 Mich App 204, 208; 561 NW2d 111 (1997). The trial court's evidentiary decisions are also reviewed for an abuse of discretion. *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).

MCR 6.120(B) provides that the trial court "may join offenses charged in two or more informations or indictments against a single defendant . . . when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense." MCR 6.120(B)(1) further provides:

> Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on
>
> (a) the same conduct or transaction, or
>
> (b) a series of connected acts, or
>
> (c) a series of acts constituting parts of a single scheme or plan.

Other factors relevant to joinder include "the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial." MCR 6.120(B)(2). "[I]mproper joinder does not, in itself, violate the Constitution," but "misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *Williams*, 483 Mich at 245, quoting *United States v Lane*, 474 US 438, 446 n 8; 106 S Ct 725; 88 L Ed 2d 814 (1986). In *Duranseau*, 221 Mich App at 208, this Court held that the trial court did not abuse its discretion in denying the defendant's request to sever charges because the evidence related to the other charges would have been admissible in separate trials as proof of intent.

Here, the trial court did not err in finding that the charges for each victim were related under MCL 6.120(B)(1)(c), because they involved a series of acts constituting part of a single scheme or plan. The assaults against BK and KV reflected a similar pattern. Defendant established a dating relationship with an unmarried mother with a young daughter, and used his involvement in the household to find opportunities to sexually assault the daughter. The assaults involved child victims of a similar age, and followed a pattern of defendant isolating the victim and directing her to perform oral or manual stimulation of his penis. Consolidating the trials served the interest of judicial economy and spared the victims of the stress of testifying at an additional trial.

The trial court's joinder decision was influenced by its determination that evidence of defendant's sexual assault against each victim would be admissible under MRE 404(b)(1) at a trial involving the other victim. Defendant argues that the trial court erred in ruling that such evidence would be admissible at separate trials. We disagree.

MRE 404(b)(1) prohibits "evidence of other crimes, wrongs, or acts" to prove a defendant's character or propensity to commit the charged crime, but permits such evidence for other purposes, "such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material." Evidence of other crimes or bad acts is admissible when (1) it is offered to show something other than character or propensity, MRE 404(b)(1); (2) it is relevant under MRE 401; and (3) its probative value is not substantially outweighed by the danger of unfair prejudice, MRE 403. *People v VanderVliet*, 444 Mich 52, 74–75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). The prosecution must explain how the evidence is relevant to a proper purpose. *People v Dobek*, 274 Mich App 58, 86; 732 NW2d 546 (2007).

In *People v Sabin (After Remand)*, 463 Mich 43; 614 NW2d 888 (2000), the defendant was charged with sexually abusing his 13-year-old daughter while they were home alone, watching television. The defendant warned her that her mother would blame her for breaking up the family if she reported the incident. *Id.* at 48-49. The trial court allowed the prosecutor to admit evidence of previous incidents involving the defendant's sexual abuse of his former stepdaughter and other daughters. Those incidents involved acts of oral sex performed on the stepdaughter several times weekly, from the time she was in kindergarten until she was in the seventh grade, and acts of oral sex on the stepdaughter and the defendant's own daughters while the girls were spending the night in the living room. *Id.* at 49-50. The trial court admitted the

evidence and instructed the jury that the purpose of the testimony was to show the defendant's "scheme, plan or system of how he does certain things." *Id.* at 51.

Our Supreme Court "clarif[ied] that evidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *Id.* at 63. The Court concluded that "the necessary degree of similarity" to prove "the existence of a common plan used by the defendant to commit the charged and uncharged acts" required a greater degree of similarity than that required to prove intent, but less than that needed to prove identity. *Id.* at 65. The Court concluded that the trial court did not abuse its discretion in determining that the prior acts of abuse and the charged offense "shared sufficient common features to infer a plan, scheme, or system to do the acts," because the defendant and his victims had a father-daughter relationship, the victims were close in age at the time of the abuse, and the defendant exploited their fear of breaking up the family. *Id.* at 66.

In *People v Pesquera*, 244 Mich App 305; 625 NW2d 407 (2001), the defendant was charged with sexually assaulting five children, ranging in age from four to six years, who all lived in the same mobile home park where the defendant resided. *Id.* at 308. The prosecutor called two witnesses, one male and one female, to testify about other alleged sexual assaults the defendant committed against children. Both witnesses testified that they were friends of the defendant. The female testified that when she was five years old, she, her brother, and the defendant were alone in the children's home. The defendant was playing video games with her brother. The defendant came into her bedroom and touched her genital area and her chest through her clothes. *Id.* at 316-317. The male victim testified that the defendant invited him to the defendant's home to play video games. The defendant brought him into a bedroom, sat the boy on his lap, and told him that he had "a boner." The defendant attempted to touch the boy's penis. *Id.* at 317. Citing *Sabin*, this Court held that these prior acts were relevant to proving a "scheme, plan, or system." *Id.* at 318. The common features were that the defendant and the alleged victims knew each other, the defendant formed friendships with the children, the children were very young at the time the abuse occurred, the abuse occurred after the defendant invited the children to play with him, and the abuse consisted of touching the children's sexual organs. *Id.* at 319. This Court concluded that the evidence did not carry a danger of unfair prejudice, because "the tendency of the evidence to establish a common plan, scheme, or system was significant (especially in light of defendant's claim of fabrication), and outweighed the danger of prejudice." *Id.* at 320.

Although defendant contends that the assaults alleged by the two victims are only superficially similar, they are similar in pertinent respects. Defendant formed a dating relationship with each girl's mother. He used his position as the mother's boyfriend to gain access to the girls away from their mothers. The victims were similar in age and the assaults themselves were similar. Defendant forced BK to perform oral sex on him. He demanded oral sex from KV, but instead forced her to manually stimulate him when she refused. The similarities between defendant's selection of victims and the assaults he committed against them justified admission of the acts under MRE 404(b) to show a common plan, scheme, or system in gaining access to young girls for the purpose of sexually abusing them.

Additionally, the prior acts evidence was also relevant under the "doctrine of numbers." In *People v Mardlin*, 487 Mich 609; 790 NW2d 607 (2010), the defendant was charged with arson, MCL 750.72, and burning insured property, MCL 750.75, in relation to a fire in his home. The prosecutor's theory was that he was behind on his mortgage payments and utility bills, and that he started the fire to obtain insurance proceeds. His defense theory was that the fire was caused by accident. The prosecutor introduced evidence that the defendant was associated with four previous home or vehicle fires, each involving circumstances in which the defendant benefitted from insurance proceeds or in some other way. *Id.* at 612-613. Our Supreme Court held that the "doctrine of chances," or the "doctrine of objective improbability," was a "theory of logical relevance [that] does not depend on a character inference." *Id.* at 616, quoting *People v Crawford*, 458 Mich 376, 393; 582 NW2d 785 (1998). The theory is based on the premise that "as the number of incidents of an out-of-the-ordinary event increases in relation to a particular defendant, the objective probability increases that the charged act *and/or* the prior occurrences were not the result of natural causes." *Mardlin*, 487 Mich at 616 (emphasis in original). The doctrine is often associated with MRE 404(b) analyses, "because the doctrine describes a logical link, based on objective probabilities, between evidence of past acts or incidents that may be connected with a defendant and proper, noncharacter inferences that may be drawn from these events on the basis of their frequency." *Id.* at 617. In *Mardlin*, 487 Mich at 617, the Court quoted *United States v York*, 933 F2d 1343 (CA 7, 1991), overruled in part on other grounds *Wilson v Williams*, 182 F3d 562, 565 (CA 7, 1999), as follows:

> The man who wins the lottery once is envied; the one who wins it twice is investigated. It is not every day that one's wife is murdered; it is more uncommon still that the murder occurs after the wife says she wants a divorce; and more unusual still that the jilted husband collects on a life insurance policy with a double-indemnity provision. That the same individual should later collect on exactly the same sort of policy after the grisly death of a business partner who owed him money raises eyebrows; the odds of the same individual reaping the benefits, within the space of three years, of two grisly murders of people he had reason to be hostile toward seem incredibly low, certainly low enough to support an inference that the windfalls were the product of design rather than the vagaries of chance . . . . This inference is purely objective, and has nothing to do with a subjective assessment of [the defendant's] character.

The Court addressed the degree of similarity required under MRE 404(b) for the various purposes of other-acts evidence:

> As we emphasized in *VanderVliet* while advancing a more flexible test than the one described in [*People v*] *Golochowicz* [413 Mich 298; 319 NW2d 518 (1982)]: "the *Golochowicz* approach to modus operandi cases to show identity is not a 'conceptual template' to 'mechanically test' all misconduct evidence barring use of other permissible theories of logical relevance." Rather, "[w]here the proponents' theory is not that the acts are so similar that they circumstantially indicate that they are the work of the accused, *similarity between charged and uncharged conduct is not required.*" Different theories of relevance require different degrees of similarity between past acts and the charged offense to warrant admission. Thus, the "level of similarity required when disproving

-5-

innocent intent is less than when proving modus operandi." "When other acts are offered to show innocent intent, logical relevance dictates only that the charged crime and the proffered other acts 'are of the same general category.' " Past events—such as fires in relation to an arson case—that suggest the absence of accident are offered on the basis of a theory of logical relevance that is a subset of innocent intent theories. As such, the past events need *only* be of the same general category as the charged offense. [*Mardlin*, 487 Mich at 622-623.]

The Supreme Court concluded that the lack of evidence that the defendant intentionally set the previous fires was of less importance than the fact that the defendant owned or controlled all of the burned property. *Id.* at 623. The Court concluded that the "unusual number" of past fires involving defendant's property "logically suggested a lack of coincidence." *Id.* at 624. The Court held that evidence of the past fires was admissible "to negate defendant's claim that the fire was a mere accident." *Id.* at 624.

In the instant case, that defendant, within a two-year span, would establish separate dating relationships with women who were unacquainted and unconnected with each other, and that both women's daughters would report similar acts of sexual abuse by defendant, strongly supports the inference that defendant's guilt, and not improbable misfortune, explains the dual events. Accordingly, the trial court correctly concluded that evidence of each victim's assault was admissible evidence relating to the assault of the other.

Defendant argues that his defense theory that each victim's mother influenced the victim to fabricate the assaults was jeopardized by the joinder of the two cases, but defendant's assault against each victim was probative of his guilt for the assault of the other victim, and also to rebut his defense theory. Defendant cannot claim that he was denied a fair trial merely because the prosecutor introduced evidence to counter his defense theory.

For these reasons, we conclude that the trial court did not abuse its discretion in joining the two cases for trial.

## III. PRIOR INCONSISTENT STATEMENT

Defendant argues that the trial court erred in sustaining the prosecutor's objection to Imogene Cochrane's (defendant's mother) testimony that BK told her that she was in the upper level of her bunk bed when defendant abused her. Defendant argues that this testimony was admissible to impeach BK, who initially testified that she did not tell Cochrane that she was in the bunk bed, but then testified that she did not remember the conversation with Cochrane. We review the trial court's evidentiary ruling for an abuse of discretion. *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014).

MRE 801(c) defines "hearsay" as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Generally, "[h]earsay is not admissible except as provided by these rules." MRE 802. MRE 801(d)(1) provides that a statement is not hearsay if the "declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A)

inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at trial . . . ." MRE 613(b) provides:

> Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).

The trial court's ruling sustaining the prosecutor's objection was based on BK's testimony denying that she remembered having the discussion with Cochrane, but BK both denied making the statement and denied remembering whether she had the discussion. Moreover, the trial court erred in ruling that prior inconsistent statements under MRE 613 and 801(d)(1) are not admissible to impeach a witness's lack of memory that a discussion was held. "When a witness claims not to remember making a prior inconsistent statement, he may be impeached by extrinsic evidence of that statement." *People v Jenkins*, 450 Mich 249, 256; 537 NW2d 828 (1995). This Court held in *People v Malone*, 180 Mich App 347, 359; 447 NW2d 157 (1989):

> Where a witness denies recollection of a prior inconsistent statement, proof of that statement by extrinsic evidence can be made. *People v Johnson*, 100 Mich App 594, 598; 300 NW2d 332 (1980). While such impeachment may be foreclosed if the witness claims a total lack of memory about the event, a witness' failure to recall statements regarding the incident does not prohibit extrinsic proof of a prior inconsistent statement. *People v Alphus Harris*, 56 Mich App 517, 524-525; 224 NW2d 680 (1974).

Plaintiff's reliance on *People v Harrell*, 54 Mich App 554; 221 NW2d 411 (1974), to argue that Cochrane's testimony was properly excluded is misplaced. In *Harrell*, the prosecutor elicited an emergency room physician's testimony that the defendant's mother refused permission for a blood draw from the defendant, to impeach the mother's testimony that she did not remember denying consent. *Id*. at 562. This Court held that the doctor's testimony was not proper impeachment, because "the witness's testimony does not concern itself with the occurrence or non-occurrence of the event, but only with whether or not the witness can recall it happening." *Id*. at 562. *Harrell* is distinguishable from the instant case, in which the defendant sought to impeach BK's testimony that she did not recall speaking with Cochrane and telling Cochrane about the bunk bed.

Although we conclude that the trial court erred in excluding Cochrane's testimony, we also conclude that the error was harmless. A preserved, nonconstitutional error "is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative." *People v Krueger*, 466 Mich 50, 54; 643 NW2d 223 (2002). "[A]n error is deemed to have been outcome determinative if it undermined the reliability of the verdict. That determination requires that we focus on the nature of the error in light of the weight and strength of the untainted evidence." *Id*. (citation and internal quotations omitted).

Another witness, Cheryl Andreen, testified that she wrote in her statement to the police that MK "indicated" that the abuse occurred when she was in the upper bunk bed in her bedroom. Andreen also testified that she was never told that the abuse occurred in the bathroom. Andreen's testimony regarding BK's prior inconsistent statement impeached BK's testimony denying that she told Andreen about the bunk bed. Although Andreen's testimony did not specifically impeach BK's testimony that she could not remember her statements to Cochrane, it fulfilled the same purpose of Cochrane's excluded testimony, with the advantage that Andreen had no familial bias in defendant's favor. Consequently, it is not more probable than not that the outcome would have been different if the jury had heard the same testimony from Cochrane. Therefore, the error was harmless.

## IV. VICTIMS' PRIOR STATEMENTS

Defendant argues that the trial court erred in allowing the prosecutor to introduce prior statements by each victim as prior consistent statements to rebut an inference of recent fabrication. MRE 801(d)(1)(B) provides that a statement is not hearsay if it is "offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . . ." Defendant contends that there was no inference of recent fabrication, and that he was unfairly prejudiced by the introduction of the victim's hearsay statements, which bolstered their allegations against him.

The trial court did not err in admitting GV's testimony regarding his daughter, KV's, prior statement. Defendant implied that MV instigated KV to falsely accuse defendant in retaliation for defendant obtaining a personal protection order (PPO) against MV. Evidence that KV told GV about the assault before MV knew about the PPO would rebut the charge of recent fabrication. Accordingly, this testimony was admissible as a prior consistent statement to rebut a charge of recent fabrication.

In BK's case, defendant mistakenly asserts that the content of the note that BK wrote to her mother to report the abuse, as presented through Andreen's testimony, was offered as a prior consistent statement. The prosecutor did not offer the testimony for that purpose, and the context in which the testimony was presented does not suggest that it was being used for that purpose. We also disagree with defendant's argument that the testimony was inadmissible hearsay. Hearsay is defined as an out-of-court statement "offered in evidence to prove the truth of the matter asserted." MRE 801(c). After the statement was offered, Andreen testified that she and AA discussed what AA should do. AA was unwilling to follow Andreen's advice to notify the police, and AA declined Andreen's offer to help find a counselor. The context indicates that the notebook statement was offered, not for its truth, but to explain what AA did in response to BK's revelation, a nonhearsay purpose. Accordingly, the evidence was admissible.

## V. CUMULATIVE EFFECT OF ERRORS

Defendant argues that even if one error does not require reversal, his convictions must be reversed because the cumulative effect of multiple errors denied him a fair trial. "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors

must undermine the confidence in the reliability of the verdict before a new trial is granted." *Dobek*, 274 Mich App at 106.

We have found only one error, the exclusion of Cochrane's testimony to impeach BK, which was harmless. Because defendant's remaining claims of error are without merit, there was no cumulative effect that denied defendant a fair trial.

## VI. SCORING OF THE SENTENCING GUIDELINES

Defendant argues that he is entitled to resentencing because the trial court erred in scoring offense variables (OVs) 8, 9, and 11 of the sentencing guidelines. Defendant preserved this issue by challenging the scoring of these variables in a motion to remand. *People v McChester*, 310 Mich App 354, 357; ___ NW2d ___ (2015), lv pending. "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). The trial court's interpretation and application of the statutory sentencing guidelines are reviewed de novo. *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004).

The trial court scored the sentencing guidelines for defendant's conviction of first-degree CSC, which is a Class A offense, MCL 777.16y, governed by the sentencing grid at MCL 777.62. Defendant received a total of 125 offense variable points, placing him in OV Level VI (100 + points). His prior record variable (PRV) score placed him in PRV Level C (10 - 24 points), resulting in a sentencing guidelines range of 135 to 225 months. MCL 777.62. The trial court sentenced defendant within that range to minimum terms of 180 months.

The trial court scored 15 points for OV 8, which is appropriate where "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." MCL 777.38(1)(a). "Asportation does not require force; asportation for the purpose of OV 8 may occur even when the victim voluntarily accompanied the defendant to a place or situation of greater danger." *People v Dillard*, 303 Mich App 372, 379; 845 NW2d 518 (2013). "To establish asportation, the movement of the victim must not be incidental to committing an underlying offense." *Id.* (internal quotations omitted). The trial court assessed 15 points for OV 8 because defendant took BK from her bedroom to the bathroom to commit the sexual offenses. Although defendant argues that the bathroom was not a place of greater danger because BK was no farther away from her mother in the bathroom than in her bedroom, moving her to the bathroom removed her from the same room as BK's sister. By taking BK to the bathroom, a more secluded location, and thereby isolating BK from her sister, defendant reduced the likelihood that his sexual activity would be noticed or discovered by BK's sister, thereby placing BK in greater danger. Accordingly, the trial court did not err in assessing 15 points for OV 8.

The trial court assessed 10 points for OV 9, number of victims. OV 9 is scored at 10 points when "[t]here were 2 to 9 victims who were placed in danger of physical injury or death, or 4 to 19 victims who were placed in danger of property loss." MCL 777.39(c). At sentencing, defendant argued that no points should be scored for OV 9 because BK was the only victim associated with the sentencing offense. He argued that the trial court could not treat KV as a victim because she was not a victim of any offense involving BK. The trial court did not address

defendant's argument, and left OV 9 at 10 points. In *People v McGraw*, 484 Mich 120; 126-127; 771 NW2d 665 (2009), our Supreme Court held that a trial court should not look beyond the sentencing offense in scoring OV 9. The Court held that "the default procedure is to score the offense variables using an offense-specific approach," unless the relevant statute provides that conduct beyond the sentencing offense must be considered. *Id*. at 127, 133-134. Accordingly, we agree with defendant that KV could not be considered an additional victim with respect to the sentencing offense involving defendant's first-degree CSC conviction relating to BK.

The prosecutor argues, however, that BK's sister can be considered a second victim of the offenses involving BK. We disagree. In *People v Phelps*, 288 Mich App 123; 791 NW2d 732 (2010), this Court held that the trial court erred in assessing 10 points for OV 9 where two of the victim's friends were present in the bedroom when the defendant sexually assaulted the victim, but the defendant did not threaten them, make physical contact with them, or place them in danger of injury, loss of life, or loss of property. *Id*. at 138-139. Conversely, in *People v Waclawski*, 286 Mich App 634; 780 NW2d 321 (2009), this Court held that 10 points were properly scored for OV 9 where the defendant invited three boys to his house on multiple occasions, and abused one of the boys on each visit. This Court stated:

> [T]here was significant evidence that both M and P would sometimes spend the night at defendant's home with K. Simply because there are no pictures of M and P on the night that K was assaulted does not mean that they were not present and the same goes for the other victims. On the basis of the testimony, it seems more reasonable that the other boys were sleeping while defendant was assaulting his chosen victim. There was even testimony from P that he woke up one night and saw defendant kneeling down by K's bed. Clearly the record demonstrates that defendant had a choice of victims when K and his friends would stay the night at his house while sometimes watching pornography and drinking alcohol provided by defendant, and also supports the conclusion that defendant would choose a victim while the other boys were present. We conclude that the trial court properly scored defendant 10 points for OV 9 because the record supports the inference that at least two other victims were placed in danger of physical injury when the sentencing offenses were committed. [*Id*. at 684.]

On other occasions, M or P was the boy the defendant chose for sexual contact or sexually explicit photography. *Id*. at 682.

This case is similar to *Phelps* and distinguishable from *Waclawski*. In *Phelps*, the other persons were present, but there was no evidence that the defendant did anything to expose them to direct or collateral harm from his assault of the victim. In *Waclawski*, the defendant abused all three of the boys over the course of his dealings with them, but on each date abused only one. The circumstances of *Waclawski* established that any of the three boys might be selected as the defendant's victim on any given night. In contrast, the circumstances of *Phelps* established that the defendant focused only on the complainant, while the other two persons were merely present. In the instant case, there is no indication that defendant regarded BK's sister as a potential co-victim or alternative victim. Moreover, defendant removed BK from her sister's presence before abusing her. Under these circumstances, the trial court erred in assessing 10 points for OV 9.

The trial court assessed 50 points for OV 11, criminal sexual penetrations. OV 11 is scored at 50 points where two or more criminal sexual penetrations occurred, at 25 points where one criminal sexual penetration occurred, and zero points where no criminal sexual penetration occurred. MCL 777.41(1). The trial court must "[s]core all sexual penetrations of the victim by the offender *arising out of the sentencing offense*." MCL 777.41(2)(a) (emphasis added). "Multiple sexual penetrations of the victim by the offender extending beyond the sentencing offense may be scored in offense variables 12 or 13." MCL 777.41(2)(b). The court is directed to "not score points for the 1 penetration that forms the basis of a first- or third-degree criminal sexual conduct offense." MCL 777.41(2)(c). Defendant argues that there was no evidence that any offense involved multiple penetrations, precluding assessment of points under OV 11. We agree.

In *People v Johnson*, 474 Mich 96; 712 NW2d 703 (2006), the defendant was convicted of two counts of third-degree CSC, MCL 750.520d, for incidents of sexual intercourse occurring on two different dates. *Id*. at 98. The Court held that the trial court erred in scoring OV 11 at 50 points because neither act of penetration arose out of the other, as required by MCL 777.41(2)(a). The Court stated:

> In this case, the sentencing offenses are for third-degree criminal sexual conduct. Therefore, in order to count the penetrations under OV 11, there must be the requisite relationship between the penetrations and the instances of third-degree criminal sexual conduct. The victim testified that she had sexual intercourse with defendant on two different dates in November 2001. There is no evidence that the penetrations resulted or sprang from each other or that there is more than an incidental connection between the two penetrations. That is, there is no evidence that the penetrations arose out of each other. More specifically, there is no evidence that the first sexual penetration arose out of the second penetration or that the second penetration arose out of the first penetration. Because the two sexual penetrations did not "aris[e] out of" each other, the trial court erred in scoring OV 11 at 25 points. [*Johnson*, 474 Mich at 101-102.]

In the instant case, the evidence indicated that defendant assaulted BK nightly over the course of a two-week period, but there was no testimony that any of the nightly assaults involved multiple acts of penetration. Accordingly, it was improper to assess 50 points for OV 11. The prosecutor argues that the erroneous scoring of OV 11 is partly offset by the trial court's error in assessing only 25 points, instead of 50 points, for OV 13, which addresses continuing pattern of criminal behavior. Under OV 13, the court shall assess 25 points when "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person," MCL 777.43(1)(c), but assess 50 points when "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more sexual penetrations against a person or persons less than 13 years of age." MCL 777.43(1)(a).

Even if we credit the prosecutor's argument, that would still leave a scoring error of 25 points when OVs 11 and 13 are considered together. When those 25 points are added to the 10 points that were erroneously scored for OV 9, defendant has established total scoring errors of at least 35 points. A 35-point reduction to defendant's total OV score of 125 points will place him in OV Level V instead of OV Level VI. Because the scoring errors affect the appropriate

-11-

guidelines range, defendant is entitled to be resentenced. *People v Francisco*, 474 Mich 82, 88-89 n 8; 711 NW2d 44 (2006).

## VII. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises additional issues in a pro se Standard 4 brief, filed pursuant to Supreme Court Administrative Order No. 2004–6.

## A. PROSECUTORIAL MISCONDUCT

Defense argues that misconduct by the prosecutor denied him a fair trial. Because defendant did not object to any of the alleged instances of misconduct, review is limited to plain error affecting defendant's substantial rights. *People v Gibbs*, 299 Mich App 473, 482; 830 NW2d 821 (2013); *Unger*, 278 Mich App at 235. Reversal is not required if "a curative instruction could have alleviated any prejudicial effect." *People v Bennett*, 290 Mich App 465, 476; 802 NW2d 627 (2010).

Defendant argues that the prosecutor improperly argued facts not supported by the evidence by stating in closing argument that the victims' mothers lost custody of their children because they failed to protect them from defendant. A prosecutor is free to argue the evidence and all reasonable inferences arising from the evidence. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). The prosecutor's remarks were properly based on the evidence and reasonable inferences arising therefrom. They did not improperly signal to the jury that defendant's guilt had been determined in prior proceedings. BK testified that she and her sister lived with their grandparents, and not with their mother. She testified that she told her friend about defendant's abuse because she was upset that her mother planned to bring another strange man into their home. The prosecutor did not insinuate that defendant had been found culpable of child abuse in any formal legal proceeding. At most, the prosecutor implied that AA was found to be an unfit parent, unwilling to act in her children's best interests. Indeed, defense counsel did not merely fail to object. Rather, he affirmatively seized the opportunity to capitalize on the prosecutor's argument by linking the mothers' parental deficiencies to his own theory that the mothers were willing to manipulate their daughters for their own vindictive purposes. Accordingly, there was no plain error affecting defendant's substantial rights.

Defendant also argues that the prosecutor improperly denigrated his character and veracity, and improperly vouched for the credibility of her own witnesses, in her closing argument. He cites the prosecutor's statement that defendant "made up" an incident in which he caught KV watching a pornographic video, and her statement that defendant testified to a "ridiculous" story to explain Cochrane's damaging testimony that defendant went to the police station to admit guilt. Prosecutors "should not . . . express their personal opinion of defendant's guilt, and must refrain from denigrating a defendant with intemperate and prejudicial remarks." *Bahoda*, 448 Mich at 282-283. "A prosecutor must also refrain from suggesting or implying that he has special knowledge regarding whether a witness is worthy of belief, . . . but a prosecutor may argue from the facts that a witness, including the defendant, is not worthy of belief, and is not required to state inferences and conclusions in the blandest possible terms . . . ." *People v Steanhouse*, ___ Mich App ___; ___ NW2d ___ (2015) (Docket No. 318329); slip op at 16 (internal quotations omitted).

The prosecutor's remarks were not improper. She did not suggest that she had any special knowledge of which witnesses were truthful and which were not worthy of belief. Rather, she argued from the evidence that the victims were credible because they described similar assaults despite having no acquaintance with each other. Similarly, her arguments that defendant was not credible did not imply any special knowledge, but urged the jury to evaluate defendant's credibility based on its own understanding of what was believable and what was not. Her characterization of defendant's attempt to explain Cochrane's testimony about his police contact as "ridiculous" did not attack defendant personally, but instead focused on the plausibility of his explanation.

We also disagree with defendant's argument that the trial court suggested that the attorneys were permitted to argue facts not in evidence when responding to the attorneys' arguments regarding inferences that could be drawn from the evidence. Viewed in context, the trial court's comment that it gave "great latitude to both counsel" did not suggest that the attorneys were permitted to argue facts not in evidence, or that the jury was allowed to make inferences not supported by the evidence. Moreover, the trial court instructed the jury that the attorneys' statements are not evidence. Jurors are presumed to follow their instructions. *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). The trial court's instruction was sufficient to protect defendant's substantial rights.

Defendant also argues that defense counsel was ineffective for failing to object to the prosecutor's arguments and to the trial court's comments on allowing "great latitude to both counsel." Because the challenged remarks were not improper, counsel was not ineffective for failing to object. A claim of ineffective assistance of counsel cannot be premised on an attorney's failure to make a futile objection. *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

## B. DIRECTED VERDICT RULING

Defendant argues that the trial court erred by failing to state on the record its reasons for denying his directed verdict motion with respect to KV's case. "The court must state orally on the record or in a written ruling made a part of the record its reasons for granting or denying a motion for a directed verdict of acquittal . . . ." MCR 6.419(F). The record discloses that the motion was heard off the record, but that defense counsel later summarized for the record the trial court's reasons for denying the motion, which the trial court agreed was accurate. By agreeing that defense counsel had accurately summarized the basis for the trial court's ruling, the trial court satisfied MCR 6.419(F).

## C. SENTENCING

### 1. SCORING OF OV 10

Defendant argues that the trial court erred in assessing 15 points for OV 10 based on a finding that he engaged in predatory conduct. MCL 777.40(1)(a). "Predatory conduct" is defined as "preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a). A preponderance of the evidence supported a finding that defendant pursued and then continued dysfunctional relationships with women to provide him with an opportunity

-13-

to gain access to their daughters so he could sexually abuse them. The trial court did not clearly err in assessing 15 points for OV 10. *Hardy*, 494 Mich at 438.

## 2. CRUEL OR UNUSUAL PUNISHMENT

Although we are remanding for resentencing because of errors in the scoring of the guidelines, we will briefly address defendant's argument that his 15 to 50-year sentences violate the federal constitutional prohibition against cruel and unusual punishment, US Const., Am VIII, and the state constitutional prohibition against cruel *or* unusual punishment. Const 1963, art 1, § 16. Defendant's 15-year minimum sentence is within the guidelines range as both originally calculated by the trial court, and as adjusted to account for the scoring errors addressed in this opinion. A sentence within the guidelines range is presumptively proportionate, and a sentence that is proportionate is not cruel or unusual punishment. *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008). Defendant was convicted of offenses that were committed before MCL 750.520b(2)(b) was amended by 2006 PA 165, effective August 28, 2006, to require a mandatory minimum sentence of 25 years for violations committed by an individual 17 years of age or older against an individual less than 13 years of age. This Court has held that the mandatory 25-year sentence is not "unduly harsh" because of "[t]he unique ramifications of sexual offenses against a child," even where the defendant has "by all accounts . . . otherwise led an exemplary life." *People v Benton*, 294 Mich App 191, 206; 817 NW2d 599 (2011). The evidence showed that defendant sexually assaulted BK repeatedly over a two-week period. Given these considerations, defendant has failed to overcome the presumptive proportionality of his sentences, and thus has not established that his sentences are unconstitutionally cruel or unusual.

## 3. JUDICIAL FACT-FINDING

Defendant also argues that Michigan's sentencing guidelines scheme violates his Sixth Amendment right to a jury trial by allowing the trial court to fashion a sentence based on facts not found by a jury.

In *People v Lockridge*, 498 Mich 358, 364; ___ NW2d ___ (2015), our Supreme Court held that "the rule from *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), as extended by *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), applies to Michigan's sentencing guidelines and renders them constitutionally deficient" because of "the extent to which the guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables that *mandatorily* increase the floor of the guidelines minimum sentence range . . . ." To remedy the constitutional violation, the Court severed MCL 769.34(2) to the extent that it makes the sentencing guidelines range as scored on the basis of facts beyond those admitted by the defendant or found by the jury beyond a reasonable doubt mandatory . . . ." *Lockridge*, 498 Mich at 364. The Court held that trial courts must still determine the applicable guidelines range and take it into account when imposing a sentence, but "that a guidelines minimum sentence range calculated in violation of *Apprendi* and *Alleyne* is advisory only[.]" *Id.* at 364-365.

Because we have already determined that defendant is entitled to be resentenced due to errors in the scoring of the guidelines, it is unnecessary to address whether defendant is also

-14-

entitled to sentencing relief under *Lockridge*. On remand, however, the trial court must resentence defendant in conformity with *Lockridge*. *Id.* at 398.

Defendant's convictions are affirmed, but we vacate his sentences and remand for resentencing consistent with this opinion. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Joel P. Hoekstra
/s/ Deborah A. Servitto