PEOPLE v MALONE

Docket No. 102213. Submitted February 14, 1989, at Grand Rapids.
     Decided July 21, 1989.

   Norman Lee Malone was convicted by a jury in Berrien Circuit
   Court, John T. Hammond, J., of armed robbery and possession
   of a firearm in the commission of a felony. Defendant appealed.

      The Court of Appeals *held:*

      1. The trial court's comments with regard to how long the
   jury could deliberate on the Friday evening this case was
   submitted to the jury, taken as a whole, were confusing and
   may have improperly communicated by implication that, if a
   verdict could not be reached that evening, the jury would be
   considered deadlocked and would be permanently discharged.
   Thus, the effect of these comments was to coerce the jury to
   reach a verdict.

      2. The trial court did not abuse its discretion in allowing the
   prosecution to use defendant's notice of alibi to impeach his
   trial testimony. Even though the allegations in the notice of
   alibi were not wholly inconsistent with defendant's testimony,
   the notice was relevant to the credibility of defendant and his
   alibi defense.

      3. The trial court did not err in refusing to suppress evidence
   found in a search of a van conducted without a warrant. The
   record disclosed that the van's driver freely and voluntarily
   consented to the search and that the search did not exceed the
   scope of the consent given.

      4. The trial court abused its discretion in precluding defen-
   dant from impeaching the complainant's credibility during
   cross-examination of a police officer with extrinsic evidence
   regarding the complainant's prior statements to the officer,
   which statements were inconsistent with the complainant's

REFERENCES
Am Jur 2d, Appeal and Error §§ 159, 166, 670, 673; Criminal Law
     § 785; Evidence § 251; Searches and Seizures §§ 41 *et seq.*; Trial
     §§ 573 *et seq.*; Weapons and Firearms § 29.
See the Index to Annotations under Exclusion and Suppression of
     Evidence; Robbery; Search and Seizure.

testimony at trial as to the description she gave of her assailant immediately after the armed robbery.

5. The trial court abused its discretion in admitting, over defendant's objection, fingerprint evidence connecting the robbery to an individual found with defendant at time of his arrest. The fingerprint evidence was not relevant to the issue of defendant's guilt or innocence.

6. The prosecution improperly bolstered the credibility of the complainant by asking her whether she would say that she was sure of her identification when she was unsure and possibly "send an innocent man to jail."

7. Error committed in instructing the jury that a conviction for armed robbery may obtain where evidence of use of a dangerous weapon is established on the basis of the victim's reasonable belief that a dangerous weapon existed was harmless in view of testimony indicating that defendant had possessed a handgun.

Reversed and remanded for a new trial.

1. TRIAL — COERCION OF JURY.

Claims of coerced verdicts are reviewed on a case-by-case basis, and all of the facts and circumstances, as well as the particular language used by the trial judge, must be considered.

2. TRIAL — COERCION OF JURY.

A court may impress upon jurors the propriety and importance of coming to an agreement and harmonizing their views, state the reasons therefor and tell them it is their duty to try to agree; but the court should not give instructions having a tendency to coerce the jury into agreeing on a verdict; while the court may reasonably urge an agreement, its discretion does not extend to the limit of coercion.

3. EVIDENCE — APPEAL.

The admission or exclusion of evidence is a matter for the sound discretion of a trial court; an abuse of discretion is found only if an unprejudiced person, considering the facts on which the trial court acted, would say that there was no justification or excuse for the ruling made.

4. CRIMINAL LAW — EVIDENCE — SUPPRESSION OF EVIDENCE — APPEAL.

The Court of Appeals will reverse a trial court's decision following a suppression hearing only if the decision is clearly erroneous; a finding is clearly erroneous where the Court of Appeals is firmly convinced that a mistake has been made.

5. SEARCHES AND SEIZURES — WARRANTLESS SEARCHES.

A search conducted without a warrant is unreasonable per se unless there exists both probable cause and an exigent circumstance establishing an exception to the warrant requirement.

6. SEARCHES AND SEIZURES — WARRANTLESS SEARCHES — CONSENT TO SEARCHES.

The consent exception to the warrant requirement for search and seizure allows a search and seizure when consent is unequivocal and specific, freely and intelligently given; the validity of a consent depends on the totality of the circumstances, and the prosecution has the burden of proving that the person consenting was authorized to do so and did so freely and voluntarily.

7. EVIDENCE — PRIOR INCONSISTENT STATEMENTS.

Proof of a prior inconsistent statement may be made by extrinsic evidence where the witness denies recollection of the statement.

8. ROBBERY — ARMED ROBBERY — WEAPONS.

Evidence of use of a dangerous weapon, which is necessary for a conviction for armed robbery, may not be established solely on the basis of the victim's reasonable belief that a dangerous weapon was used.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Paul Maloney,* Prosecuting Attorney, and *David P. LaForge,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Charles J. Booker* and *Chari Grove*), for defendant on appeal.

Before: HOOD, P.J., and WAHLS and NEFF, JJ.

PER CURIAM. Following a jury trial, defendant was convicted of armed robbery, MCL 750.529; MSA 28.797, and possession of a firearm while committing a felony, MCL 750.227b; MSA 28.424(2). Defendant was sentenced to eight to fifty years of imprisonment on the armed robbery conviction. He also received the mandatory two-year

sentence for his felony-firearm conviction. Defendant appeals as of right and we reverse.

I

Defendant first contends that he was denied a fair trial because the trial court, by its comments to the jury, created an atmosphere conducive to hasty deliberations.

In this case, the jury began its deliberations on the fourth day of trial at approximately 9:03 A.M. Deliberations continued throughout the day with a brief break for lunch. At approximately 5:50 P.M., outside the presence of the jury, the trial court explained to counsel its intention to determine from the jury whether deliberations should continue into the evening following a break for dinner. The trial court then called the jury into the courtroom and stated in pertinent part:

> My experience has been—and I might be right, I can easily be wrong, that in most cases there's either a verdict shortly after dinner or it's hopeless, and so if shortly after dinner you have a verdict, fine. If not, I will be calling you in after a rather brief period of time and see if you people think that it might be a few more minutes or forever and if it's forever, we will just have to discharge you and send you home. If it's impossible to reach a verdict, that's unfortunate, we don't like to have that, but sometimes that's the way it is.

At 8:18 P.M., after the jury had returned from dinner, the trial court inquired of the foreman whether the jury was close to reaching a verdict. After the foreman indicated that the jury was close to a verdict, the trial court stated in pertinent part: "Close to a verdict. Okay. You have

already put in a fair-sided day here and we don't want anybody beaten into submission."

In response to questioning by the trial court, the foreman indicated that additional deliberations of a half an hour would be likely to make a difference. The following exchange then occurred:

*The Court:* Do you understand we are not trying to beat you into it or pound on anybody until they are succumbed [sic], and if at some point in time you can't reach a verdict, as much as we'd like you to, if you can't, you can't.

Okay. Do you think another hour will help or more likely than not to get a verdict?

*Foreman:* Yes. Would it be in order, at the end of the hour, to send a slip to you from us if we feel we are not ready to have a consensus to give us another half an hour?

*Mr. Banyon:* Your Honor, I think both counsel are in agreement that the jury should be able to deliberate as long as they want.

*The Court:* I just want to make it clear that we are not locking them in there forever and a day, we are not going to keep up until Monday morning in that room. They [sic] only word that worries me a little more is, "consensus."

Do you understand when you are all through, in order to receive any verdict in any criminal cause, it has to be unanimous. In civil cases you can have ten out of twelve but that doesn't apply in criminal. It has to be unanimous. If it can't be unanimous, it isn't a verdict.

On that basis, why don't we let you go in there and if you come to a verdict, hit the buzzer and if at any time it becomes totally clear that a verdict is impossible, hit the buzzer, and if at any time you are simply too exhausted to go on and you are in between those two, hit the buzzer and we will last as long as you last, but you have three options, I guess: A a [sic] verdict, deadlocked, or you are just too tired to keep going.

With that, we will let you resume.

After the jury returned to the jury room to deliberate, the trial judge stated on the record that the reason he had emphasized to the jurors that he was not going to require that they continue deliberations that night was because he did not want a claim that he had coerced them into reaching a verdict.

At 9:43 P.M., the jury returned a verdict of guilty as charged.

On appeal, defendant contends that the trial court's comments led to a coerced verdict. Defendant urges that the thrust of the trial court's remarks was that, if no verdict was reached that evening, the trial would be over. Claims of coerced verdicts are reviewed on a case-by-case basis, and all of the facts and circumstances, as well as the particular language used by the trial judge, must be considered. *Zeitz v Mara,* 290 Mich 161, 166; 287 NW 418 (1939); *People v Pizzino,* 313 Mich 97, 103; 20 NW2d 824 (1945).

In *People v Strzempkowski,* 211 Mich 266; 178 NW 771 (1920), our Supreme Court held that the defendant was denied a fair trial because the trial court's comments, in effect, informed the jurors that, if they did not agree upon a verdict, they would be discharged from further service during the term. The Court took judicial notice that such a procedure would cause humiliation to the jury panel. The Court in *Strzempkowski, supra,* p 268, stated:

> The rule as stated in 38 Cyc. p. 1762, is, we think, the only safe one to follow:
> "The court may impress upon the jury the propriety and importance of coming to an agreement, and harmonizing their views, state the reasons therefor and tell them it is their duty to try to agree; but should not give instructions having a tendency to coerce the jury into agreeing on a

verdict. While the court may reasonably urge an agreement, its discretion does not extend to the limit of coercion."

While we do not believe that the trial court was attempting to coerce a verdict, we are constrained to agree with defendant that the effect of the trial court's comments to the jury may have been a coerced verdict. In light of the fact that the jury was never told that it could resume deliberations on the following Monday, we believe that the trial court's comments, taken as a whole, at best were confusing and may have improperly communicated by implication that, if a verdict could not be reached that evening, the jury would be considered deadlocked and would be permanently discharged.

II

Defendant next contends that the prosecutor's use of defendant's notice of alibi to impeach his trial testimony denied defendant a fair trial.

Before trial, defendant's former attorney filed a notice of alibi defense which stated that, at the time of the alleged offense, defendant was at the home of his sister, Rosemary Malone. Defendant's notice of alibi defense listed, among others, Robert Minor and Craig Smith as alibi witnesses.

During cross-examination, defendant stated that he had not seen Craig Smith on the date of the offense. Defendant also testified that he did not even know Robert Minor. Over defendant's objection, the trial court permitted the prosecutor to impeach defendant's credibility by use of the notice of alibi, which listed Craig Smith and Robert Minor as alibi witnesses.

The trial court relied on *People v Von Everett*, 156 Mich App 615; 402 NW2d 773 (1986), in ruling

that the prosecutor could use the notice of alibi to impeach defendant's credibility. In *Von Everett, supra,* p 624, this Court held that a notice of alibi which alleged that the defendant was in Battle Creek at the time of the charged offense was a party-opponent admission under MRE 801(d)(2)(C) and that it could be used to impeach the defendant's testimony that he was out of the state at the time of the crime. The *Von Everett* panel focused on the fact that the defendant's testimony directly contradicted the allegations set forth in the notice of alibi.

Defendant attempts to distinguish *Von Everett* on the ground that, in the instant case, defendant's alibi testimony that he was at his sister's home at the time of the crime was consistent with the notice of alibi.

The admission or exclusion of evidence is a matter for the sound discretion of the trial court. *People v Harden,* 166 Mich App 106, 111; 420 NW2d 136 (1988). An abuse of discretion is found only if an unprejudiced person, considering the facts on which the trial court acted, would say that there was no justification or excuse for the ruling made. *People v Hamm,* 100 Mich App 429, 438; 298 NW2d 896 (1980), lv den 411 Mich 888 (1981).

The evidence allowed for impeachment purposes was relevant to the credibility of defendant and his alibi defense. The trial court in this case, therefore, did not abuse its discretion in allowing defendant to be impeached with his notice of alibi, even though the allegations therein were not wholly inconsistent with his testimony.

III

Defendant next contends that the trial court

erred in admitting into evidence, over defendant's objection, items found in the search of a moving van. Before trial, defendant filed a motion challenging his arrest and seeking to suppress incriminating evidence seized during the search of the moving van. Following a hearing, the trial court denied defendant's motion, finding that the search was executed pursuant to the driver's valid consent.

A trial court's decision following a suppression hearing will not be reversed by this Court unless it is clearly erroneous. *People v Bryant,* 135 Mich App 206, 210; 353 NW2d 480 (1984), lv den 419 Mich 950 (1984). A finding is clearly erroneous when the reviewing court is firmly convinced that a mistake has been made. *People v Smith,* 162 Mich App 534, 539; 413 NW2d 42 (1987).

A search conducted without a warrant is unreasonable per se unless there exists both probable cause and an exigent circumstance establishing an exception to the warrant requirement. *People v Reed,* 393 Mich 342, 362; 224 NW2d 867 (1975), cert den 422 US 1044, 1048; 95 S Ct 2660, 2665; 45 L Ed 2d 696, 701 (1975); *People v Anthony,* 120 Mich App 207, 210; 327 NW2d 441 (1982), lv den 417 Mich 897 (1983), cert den 462 US 1111; 103 S Ct 2463; 77 L Ed 2d 1340 (1983). At a suppression hearing, the prosecution has the burden of showing that the search and seizure were justified by a recognized exception to the warrant requirement. *People v Wade,* 157 Mich App 481, 485; 403 NW2d 578 (1987).

The prosecution in this case relied on the consent exception to the warrant requirement. The consent exception allows search and seizure when consent is unequivocal and specific, freely and intelligently given. *People v Kaigler,* 368 Mich 281, 294; 118 NW2d 406 (1962). The validity of a

consent depends on the totality of the circumstances, and the prosecutor has the burden of proving that the person consenting was authorized to do so and did so freely and voluntarily. *People v Brown,* 127 Mich App 436, 440-441; 339 NW2d 38 (1983), lv den 419 Mich 896 (1984); *People v Wagner,* 104 Mich App 169, 176; 304 NW2d 517 (1981).

At the suppression hearing, the prosecution presented undisputed testimony that the driver of the moving van, Alan Williams, twice gave investigating police officers permission to look in the back of the van which was stopped for a traffic violation. The testimony also revealed that the driver himself opened the back door of the van for the officers.

Defendant contends that Williams' consent was coerced. We disagree. Although Williams was initially taken to the back seat of the patrol car for approximately one minute to a minute and a half, no evidence was presented suggesting that Williams was handcuffed or placed under custodial arrest. Williams' consent was not granted at gunpoint; the officers did not pull their guns out until after the van door was raised by Williams. The consent was valid even though Williams was not apprised of his right to refuse consent. See *Schneckloth v Bustamonte,* 412 US 218, 231; 93 S Ct 2041; 36 L Ed 2d 854 (1973). The trial court specifically found that Williams was not forced to agree to the search, but, rather, that he could revoke his consent at any time.

Defendant also contends that the search exceeded the scope of Williams' consent. We disagree. The context of Williams' consent to search does not convey an intention to limit the search to one solely for the purpose of identifying the persons found in the back of the van.

We believe, therefore, that the trial court did

not err in denying defendant's motion to suppress items seized from the moving van. The items were seized pursuant to a valid consent by the driver of the van.

IV

Defendant next contends that he was denied his right to present a defense when the trial court excluded evidence of an out-of-court statement made by Ruby Marie Davis, the victim.

During cross-examination by defense counsel, Davis testified that she could not remember the description of defendant that she had given to the police. Later, during defense counsel's cross-examination of Benton Harbor Police Officer Henry Pace, the trial court sustained on the basis of hearsay the prosecutor's objection to defense counsel's inquiry as to the description given by Davis which was contained in the officer's police report. The trial court reasoned that, because Davis testified that she could not remember the substance of her initial description of the assailant to the police, and because Davis' testimony lacked a positive statement of identification, the hearsay exception of MRE 801(d)(1) was inapplicable. The trial court further reasoned that, under MRE 613, Davis could only be impeached as to her description recorded in the initial police report while she was on the stand.

We agree that MRE 801(d)(1) is inapplicable. The testimony defense counsel sought to elicit on cross-examination of the police officer did not have anything to do with a "statement of identification of a person made after perceiving him." Davis was not identifying anyone in her discussion with the police officer; she was trying to describe the man who had robbed her at gunpoint.

Defense counsel was attempting to impeach Davis with her prior inconsistent statement. On the night of the robbery, Davis had talked to the police officer, Pace, and had given him a description of the one robber whose face and clothing she had seen. Pace included in his written police report the description given by Davis.

On cross-examination of Davis, defense counsel made much of the fact that the description given to Pace on the night of the robbery did not match the characteristics of the defendant. Davis persistently testified that she did not remember what description she gave to Pace and that she was still so frightened by the experience of the robbery when she talked to Pace that night that she might have said almost anything.

In attempting to impeach the credibility of Davis' identification of defendant at trial, defense counsel cross-examined Pace about the description recorded in the report authored by Pace after talking to Davis. The prosecutor's objection to this line of questioning was sustained by the trial judge.

This attempt to impeach Davis through the testimony of Pace was proper under MRE 613(b), which provides:

> Extrinsic evidence of prior inconsistent statement of witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).

Davis had given a prior inconsistent statement and was afforded the opportunity to explain or

deny it. She did neither, saying only that she could not remember the description she had given Pace on the night of the robbery. The prosecution was given the opportunity to interrogate Davis after cross-examination. Accordingly, all of the requirements of MRE 613(b) were met for impeachment through extrinsic evidence of the prior inconsistent statement of the witness Davis. The trial court erred in ruling that Pace could not be cross-examined regarding the description given by Davis.

Where a witness denies recollection of a prior inconsistent statement, proof of that statement by extrinsic evidence can be made. *People v Johnson,* 100 Mich App 594, 598; 300 NW2d 332 (1980). While such impeachment may be foreclosed if the witness claims a total lack of memory about the event, a witness' failure to recall statements regarding the incident does not prohibit extrinsic proof of a prior inconsistent statement. *People v Alphus Harris,* 56 Mich App 517, 524-525; 224 NW2d 680 (1974).

In this case, Davis testified that she was able to remember the appearance of her assailant and the fact that she gave a description of the person to police officers immediately after the incident. We therefore conclude that the trial court abused its discretion in precluding defendant from impeaching Davis' credibility during cross-examination of Officer Pace with extrinsic evidence regarding Davis' prior inconsistent statements to Officer Pace.

v

Defendant next contends that he was denied a fair trial when the trial court permitted the prosecutor to introduce fingerprint evidence connecting another person with the robbery. We agree.

Defense counsel objected when the prosecutor mentioned during his opening statement that latent fingerprints on items left at the scene of the robbery were positively identified as belonging to Anthony Sandlin, one of the people found with defendant at the time of his arrest. The trial court allowed the argument, but gave a cautionary instruction to the jury to the effect that another's guilt "does not necessarily affect the guilt or innocence" of defendant.

On the second day of trial, defendant brought a motion in limine, on the basis of relevancy, to bar any testimony relating to Sandlin's fingerprints. The trial court denied defendant's motion.

Detective-Sergeant Gregory Stevens, a fingerprint expert, was permitted to testify as to the positive identification of Sandlin's fingerprints. Defendant's motion for a mistrial on the basis of the admission of Sandlin's fingerprint evidence was overruled by the trial court. We believe that the trial court abused its discretion in admitting the fingerprint evidence.

Generally, all relevant evidence is admissible, and irrelevant evidence is inadmissible. MRE 402; *People v Duff,* 165 Mich App 530, 540; 419 NW2d 600 (1987), lv den 430 Mich 900 (1988). Evidence is relevant if it has any tendency to make the existence of a fact in issue more probable or less probable than it would be without the evidence. MRE 401; *People v Slovinski,* 166 Mich App 158, 177; 420 NW2d 145 (1988).

The fingerprint evidence admitted in this case had no tendency to make the existence of a fact in issue more probable or less probable than without the evidence. Therefore, the evidence was irrelevant and inadmissible. The trial court abused its discretion in admitting such evidence.

VI

Defendant next contends that he was denied a fair trial when the prosecutor attempted to bolster the victim's testimony by asking her if she would say that she was sure of her identification when she was unsure and possibly "send an innocent man to jail."

The prosecutor's question was inappropriate because it improperly bolstered the credibility of a prosecution witness. See *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985). We therefore caution the prosecutor to refrain from such questioning in the event defendant is retried.

VII

Defendant's final contention is that his conviction for armed robbery must be reversed because the trial court's instructions permitted the jury to find that defendant was armed merely because the victim believed defendant had a gun. Defendant specifically contends that CJI 18:1:01(4)(C) improperly allows a jury to convict where the prosecution shows only the victim's reasonable belief that a dangerous weapon existed.

Although defendant objected to the merger of CJI 3:1:16 and 18:1:01 at trial, defendant did not raise the specific objection now raised on appeal. Accordingly, defendant has failed to preserve this issue for appellate review, and relief will be granted only to prevent manifest injustice. *People v Kelly*, 423 Mich 261, 271-272; 378 NW2d 365 (1985).

In *People v Barkley*, 151 Mich App 234; 390 NW2d 705 (1986), lv den 426 Mich 869 (1986), this Court considered the objection defendant now raises to CJI 18:1:01(4)(C) and held that the in-

struction improperly states the law. However, this Court in *Barkley* reasoned that, because the victim testified to actually seeing a pistol, the giving of the instruction did not result in manifest injustice. *Barkley, supra,* pp 239-240.

Similarly, in the instant case, Davis testified that defendant used a "silverish" handgun during the robbery. Danny Mosby also testified that he saw a small-caliber gun being used by the robbers. Joseph Jones described the handgun as "rusty." Jones and Mosby both testified that one of the guns confiscated from the moving van appeared similar to the gun used that night.

Because there was testimony as to the actual presence of a dangerous weapon, there is little danger that the trier of fact improperly based its finding on the armed element solely upon the victim's reasonable apprehensions. We believe that the giving of the instruction did not result in manifest injustice.

In the event this case is retried, the parties and the trial judge should take note of the *Barkley* case when jury instructions are prepared and read.

### VIII

We believe that the cumulative effect of the various errors in this case were so prejudicial as to deny defendant a fair trial. Reversal of defendant's conviction is therefore required. This case is remanded to the trial court so that defendant may be afforded a new trial.

Reversed and remanded. We do not retain jurisdiction.