*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HELEN COLSTON, Individually and as Next
friend to NANAJAH DAIKIA COLSTON, Minor,

        Plaintiff-Appellant/Cross-Appellee,

v

IBRAHIM SALMAN-ASSAD HADDAD,

        Defendant,

and

ESURANCE INSURANCE COMPANY,

        Defendant-Appellee/Cross-
        Appellant.

UNPUBLISHED
November 21, 2019

No. 342087
Wayne Circuit Court
LC No. 15-016005-NI

Before: RONAYNE KRAUSE, P.J., and METER and STEPHENS, JJ.

PER CURIAM.

In this action to recover first-party no-fault personal insurance protection (PIP) benefits, plaintiff appeals as of right the judgment of no cause of action. Defendant cross-appeals, challenging the trial court's order denying its motion for attorney fees and costs. We affirm in all respects.

## I. BACKGROUND

Plaintiff was involved in a roll-over automobile accident on July 4, 2015. Plaintiff was examined at the hospital and discharged the same day, but she subsequently received several solicitations from providers of medical and legal services. Plaintiff maintained that she suffered from chronic pain, dizziness, and forgetfulness as a result of the accident. Plaintiff briefly treated with Dr. Nazih Iskinder and then Dr. Jeffrey Parker, before choosing Dr. Lucia Zamorano as her primary-care provider for accident-related treatment. Dr. Zamorano referred plaintiff for MRIs and other diagnostic imaging, and also prescribed physical therapy and balance therapy.

-1-

Dr. Zamorano certified plaintiff as disabled and unable to work. Plaintiff was also evaluated by a neuropsychologist, Dr. Firoza Van Horn, who concluded that plaintiff was suffering from cognitive impairments related to the accident.

Plaintiff submitted a claim to defendant, her no-fault insurer, for PIP benefits. Defendant referred plaintiff to Dr. Leonard Sahn for an independent medical examination. Dr. Sahn disputed Dr. Zamorano's diagnoses and treatment recommendations, finding that plaintiff sustained only a muscle strain in the July 2015 accident and did not suffer from any long-term physical or cognitive impairment. Dr. Sahn took special note of the fact that "runners"[1] had coordinated plaintiff's care since the accident. Dr. Christian Schutte, Ph.D., a licensed psychologist, reviewed plaintiff's records and concluded that plaintiff was not suffering from any traumatic brain injury.

Plaintiff sought reimbursement from defendant for replacement and household services performed by her mother, Barbara Stringer. The services included cleaning the kitchen and bathroom, vacuuming, dusting, dishwashing, cooking, making beds, laundry, grocery shopping, and running errands. In October 2015, defendant retained an investigative-service firm to conduct unmanned surveillance of plaintiff's home from October 20 to 25, 2015. The video recorded plaintiff leaving the home each day in a vehicle for brief periods and also showed plaintiff placing a box in a trash can and "dragging a large cardboard box" to the trash can. The videos did not record Stringer visiting the house.

Plaintiff's no-fault policy with defendant included a fraud provision, which stated:

> *"We"* do not provide coverage or benefits for any person who has made fraudulent statements or engaged in fraudulent conduct in connection with any *"accident"* or *"loss"* for which coverage or benefits are sought under this policy.

Based on the conflicting diagnoses and the surveillance footage, defendant determined that plaintiff's claim for replacement services was fraudulent and, as a result, discontinued payment of plaintiff's PIP benefits.

After being notified of the discontinuation, plaintiff brought this action against defendant for breach of the no-fault policy. The case proceeded to trial and a jury determined that plaintiff made fraudulent statements or engaged in fraudulent conduct in connection with the 2015 motor vehicle accident. Accordingly, the trial court entered a judgment of no cause of action in favor of defendant, consistent with the fraud exclusion in plaintiff's policy. Plaintiff then moved for a new trial under MCR 2.611. Although the trial court expressed its disagreement with the jury's verdict, it denied plaintiff's motion for a new trial. The trial court also denied defendant's motion for attorney fees and costs. These appeals followed.

---

[1] A "runner" means "A law-office employee who delivers papers between offices and files papers in court" or "One who solicits personal-injury cases for a lawyer." *Black's Law Dictionary, 8th ed*.

## II. ANALYSIS

### A. COERCED VERDICT

Plaintiff first argues that she is entitled to a new trial because the trial court coerced the jury's verdict. "Claims of coerced verdicts are reviewed on a case-by-case basis, and all of the facts and circumstances, as well as the particular language used by the trial judge, must be considered." *People v Malone*, 180 Mich App 347, 352; 447 NW2d 157 (1989).

Jury deliberations began on the Wednesday before Thanksgiving. The first question on the special verdict form asked, "Did the plaintiff make fraudulent statements or engage in fraudulent conduct in connection with the July 4, 2015 motor vehicle accident?" The verdict form advised the jury that if it answered "yes" to this question, it was not required to answer any further questions. Consistent with the verdict form, the trial court instructed the jury that, "the first question, if you answer yes to it, then you won't need to go any further."

Plaintiff argues that the trial court's statement likely coerced the jury to find that plaintiff engaged in fraud so that it could leave early for the Thanksgiving holiday. We disagree. The trial court did not make any mention of the Thanksgiving holiday during this instruction, nor did the trial court indicate its intended schedule for jury deliberations. Jurors are presumed to have understood and followed the trial court's instructions, and to have honored their oaths to decide the case without partiality. *People v Cline,* 276 Mich App 634, 638; 741 NW2d 563 (2007); *Bordeaux v Celotex Corp,* 203 Mich App 158, 164; 511 NW2d 899 (1993). The trial court's instruction was a proper statement of the law and there is nothing in the record from which we may conclude that the jury's finding was based on its desire to conclude deliberations before Thanksgiving. In short, there is no basis in the record to conclude that the jury did not honor its oath to decide the case fairly and impartially. Plaintiff's argument to the contrary is without merit.

### B. ATTORNEY MISCONDUCT

Plaintiff argues that the trial court erred by denying her motion for a new trial because defense counsel's remarks during opening statements and closing argument improperly inflamed the jury. A new trial may be granted under MCR 2.611(A)(1)(b) where a party's "substantial rights are materially affected" by reason of "[m]isconduct of the jury or of the prevailing party." "A trial court's decision to grant or deny a motion for a new trial under MCR 2.611 is reviewed for an abuse of discretion." *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 761; 685 NW2d 391 (2004). "An abuse of discretion occurs when a court chooses an outcome that is not within the principled range of outcomes." *McManamon v Redford Twp*, 273 Mich App 131, 138; 730 NW2d 757 (2006). "Instruction by a trial court that the statements of counsel are not evidence is generally sufficient to cure any prejudice that might arise from improper remarks by counsel. *Tobin v Providence Hosp*, 244 Mich App 626, 641; 624 NW2d 548 (2001). However, a new trial is warranted when an attorney's misconduct "may have caused the result or played too large a part and may have denied a party a fair trial." *Reetz v Kinsman Marine Transit Co*, 416 Mich 97, 103; 330 NW2d 638 (1982).

Plaintiff argues that defense counsel inflamed the jury by repeatedly denigrating plaintiff's counsel and physicians, portraying them as greedy and unscrupulous, which diverted the jury from the merits of plaintiff's case. "Counsel may, acting on their own judgment as to propriety and good taste, discuss the character of witnesses, the probability of the truth of testimony given on the stand, and may, when there is any reasonable basis for it, characterize testimony." *Kern v St Luke's Hosp,* 404 Mich 339, 353-354; 273 NW2d 75 (1978) (internal citation, brackets, emphasis, and quotation marks omitted). "But where language is such as evinces a studied purpose to inflame or prejudice the jury, based upon facts not in the case, this Court has not hesitated to reverse." *Id.* at 354 (internal citation, emphasis, and quotation marks omitted).

Plaintiff takes issue with the following remarks by defense counsel:

- [T]his is a case about unlawful solicitation, or what's commonly referred to, as ambulance chasing."

- "[Y]ou guys [jurors] weren't born yesterday" (in regard to the connection between Dr. Zamorano's practice and the MRI provider).

- "[Neurosurgeons] make money, doing surgery, . . . if you can't . . . convince your patient [that she needs] surgery, what better way [to make money treating the patient] to send them on for . . . therapy, at your physical therapy location."

- "Somebody's making some money, somewhere."

- "She'll file a law suit about anything."

- "[Plaintiff's physicians] stand to profit [but] Esurance's experts, do not."

The challenged remarks were based on the evidence at trial and properly presented defendant's theory of the case to the jury. A central theme of the defense theory was that plaintiff and her physicians abused the no-fault system. According to defendant, plaintiff's physicians recommended unnecessary treatment for plaintiff and falsely attributed plaintiff's complaints to the July 2015 accident and plaintiff went along with this scheme to recover PIP benefits. Defense counsel cross-examined plaintiff's physicians at length about their financial ties to the case, plaintiff's numerous diagnoses, and the link between the accident and any of plaintiff's alleged ailments. Evidence was also presented that numerous entities had solicited plaintiff for treatment after her accident and that at least one of plaintiff's physicians was closely linked to her attorney. The challenged comments relate this evidence to defendant's fraud theory and were not so inflammatory as to create a concern that the jury acted out of passion, rather than thoughtful consideration of the merits of plaintiff's claim.

Plaintiff also argues that defense counsel made an improper civic duty argument by saying:

> I know you're going to look at the facts, and the evidence, and use your common sense, your collective wisdom, and your life experiences, to understand, this is not what the no-fault act was meant for.

Counsel in a civil action is not permitted to "inject issues into the trial broader than those pled and brought out by the testimony below." *Joba Constr Co, Inc v Burns & Roe, Inc*, 121 Mich App 615, 637; 329 NW2d 760 (1982). PIP benefits include all "reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a). Under MCL 500.3107(1), a PIP claimant must show that the claimed expenses are: "(1) for an injured person's care, recovery, or rehabilitation, (2) reasonably necessary, (3) incurred, and (4) reasonable." *Clark v Al-Amin*, 309 Mich App 387, 396; 872 NW2d 730 (2015) (internal citation, ellipsis, and quotation marks omitted). Defense counsel's statement that "this is not what the no-fault act was meant for" did not inject any issues into the jury's deliberation that were not already before it. Taken in context, the statement is an argument that plaintiff's injuries were fabricated and therefore the claimed expenses were not reasonably necessary for plaintiff's post-accident care.

Finally, plaintiff argues that she is entitled to a new trial because defense counsel introduced new evidence during her closing argument by telling the jury that plaintiff was currently enrolled in a PhD program and that this enrollment was evidence that plaintiff was not cognitively impaired. No evidence of any PhD enrollment was presented to the jury during trial and, therefore, we agree with plaintiff that the statement was entirely improper. *Kern*, 404 Mich at 354. Nonetheless, we are unable to find that the statement requires reversal. First, when plaintiff's counsel challenged the statement, defense counsel admitted that the statement had no basis in the record. Second, in front of the jury, the trial court strongly admonished defense counsel that the statement was "improper" because it had no basis in the testimony. Finally, the jury was instructed—at the outset of this case—that the attorney's statements were not evidence and—at the conclusion of the trial—that the evidence consisted only of the witnesses' testimony and the exhibits. "Jurors are presumed to follow [the trial court's] instructions, and instructions are presumed to cure most errors." *Zaremba Equipment, Inc v Harco Nat'l Ins Co*, 302 Mich App 7, 25; 837 NW2d 686 (2013), quoting *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). There is nothing in the record from which we can conclude that the jury decided this case on counsel's improper statement, rather than on the evidence properly before it. Therefore plaintiff is not entitled to relief.

## C. GREAT WEIGHT OF THE EVIDENCE

Plaintiff argues that the trial court erred by denying her motion for a new trial on the ground that the jury's verdict was against the great weight of the evidence. A new trial may be granted under MCR 2.611(A)(1)(e) where "[a] verdict or decision [is] against the great weight of the evidence or contrary to law." "When a party claims that a jury verdict is against the great weight of the evidence," we may not overturn the verdict unless the verdict "is manifestly against the clear weight of the evidence." *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 498; 668 NW2d 402 (2003). "The issue usually involves matters of credibility or circumstantial evidence, but if there is conflicting evidence, the question of credibility ordinarily should be left for the fact-finder." *Dawe v Bar-Levav & Assoc (On Remand)*, 289 Mich App 380, 401; 808 NW2d 240 (2010).

The jury heard testimony that several practitioners solicited plaintiff after her accident. Defendant's physician testified that plaintiff's ailments were either not caused by the accident or were nonexistent. Although plaintiff sought reimbursement for the services Stringer provided to her, the surveillance video did not show Stringer entering the home over the course of several days. Additionally, the surveillance video shows plaintiff engaging in activities arguably inconsistent with her claimed injuries. Plaintiff presented contrary testimony from her medical providers, who claimed that plaintiff's injuries were legitimate and caused by the accident. Plaintiff testified that Stringer had visited the home to provide services, but did so through a back entrance which was not caught by the surveillance video. This conflicting evidence created issues of credibility for the jury, which it resolved in defendant's favor. Because the jury's verdict was based on competent evidence—specifically, the testimony of defendant's expert witnesses and the surveillance video—it may not be set aside.

Plaintiff complains that the trial court failed to focus on the great weight of the evidence ground for granting a new trial, and instead only considered whether there was an "error of law" to warrant a new trial under MCR 2.611(A)(1)(a) or (g), and whether the "verdict . . . [was] contrary to law" under subsection (e). Plaintiff's argument relates to the trial court's statement at the motion hearing, "You did an 'A', 'G', and I didn't know what the error of law was. I guess you mean, the standard that I decided?" The trial court, however, also specifically stated that its ruling addressed MCR 2.611(A)(1)(d) (grossly inadequate verdict), and the "great weight of the evidence," MCR 2.611(A)(1)(e). Consistent with our analysis, the trial court commented that it would not invade the province of the jury. Additionally, in its ruling, the trial court noted that plaintiff frequently testified that she did not know or remember facts. These statements are consistent with a great-weight analysis.

Plaintiff emphasizes that the trial court indicated that it did not personally believe that plaintiff committed fraud. The trial court's personal opinions on the evidence, however, are not relevant to a great-weight motion. As the trial court noted below, and as we now reiterate on appeal, where competent evidence supports the jury's verdict, it cannot be set aside. Accordingly, the trial court did not err by denying plaintiff's motion for a new trial.

## D. INSTRUCTIONAL ERROR

Plaintiff argues that the trial court erroneously instructed the jury on the defense of fraud. "Claims of instructional error are reviewed de novo," but the "trial court's determination that a jury instruction is accurate and applicable to the case is reviewed for an abuse of discretion." *Estate of Goodwin v Northwest Michigan Fair Assoc*, 325 Mich App 129, 156-157; 923 NW2d 894 (2018) (internal citations and quotation marks omitted). "The instructions should include all the elements of the plaintiff's claims and should not omit material issues, defenses, or theories if the evidence supports them." *Id*. (internal citation and quotation marks omitted).

A *defendant* claiming the defense of fraud must prove, by a preponderance of the evidence, *Stein v Home-Owners Ins Co*, 303 Mich App 382, 387-391; 843 NW2d 780 (2013), the following four elements:

(1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly,

without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it. A statement is material if it is reasonably relevant to the insurer's investigation of a claim. [*Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 424-425; 864 NW2d 609 (2014) (internal citation omitted).]

A *plaintiff* seeking to establish common-law fraud must prove six elements by clear and convincing evidence:

The general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery. [*Candler v Heigo*, 208 Mich 115, 121; 175 NW 141 (1919), overruled in *United States Fidelity & Guaranty Co v Black*, 412 Mich 99, 116 n 8; 313 NW2d 77 (1980) (overruling *Candler* insofar as it purports to hold that all six common-law requirements of fraud must be proven in an innocent-misrepresentation case) (internal citation and quotation marks omitted).]

The trial court instructed the jury as follows:

The Defendant alleges the Plaintiff has made fraudulent statements, or engaged in fraudulent conduct, in connection with the July 4th, 2015, motor vehicle accident, for which coverage or benefits are sought under the Defendant's policy.

The Defendant must show that:

One, the misrepetation [sic] – misrepresentation was material.

Two, that it was false.

Three, that the Plaintiff knew that it was false at the time it was made, or that it was made recklessly, without any knowledge of its truth.

And four, that the Plaintiff made the material misrepresentation with the intention that the Defendant would act upon it.

The representation is material if it is reasonably relevant to the Defendant's investigation of a claim.

Each of these elements must be proven by the Defendant, and all must be found to exist.

The absence of any one of these is fatal to this defense.

If you find that the Plaintiff made fraudulent statements, or engaged in fraudulent conduct, in connection with the July 4th, 2015, motor accident, then, under the terms of the Plaintiff's policy with the Defendant, the Plaintiff is not entitled to coverage, or any No-fault P.I.P. benefits for the July 4th, 2015, motor vehicle accident.

Plaintiff argues that the trial court's instructions were erroneous because (1) defendant was required to prove fraud by clear and convincing evidence and (2) the trial court did not instruct the jury on defendant's burden to prove reliance on the misrepresentation and a resulting injury. Plaintiff's argument, however, conflates the elements of a plaintiff's cause of action for fraud with a defendant's defense of fraud. As already noted, the burden of proof for a fraud defense is a preponderance of the evidence and the defendant need not show reliance or injury. Plaintiff's argument is without merit.

## E. DEFENDANT'S CROSS-APPEAL

Lastly, defendant argues that the trial court erred by denying its motion for attorney fees and costs under the no-fault act, MCL 500.3148(2). At the time of trial, MCL 500.3148(2) provided:[2]

> An insurer may be allowed by a court an award of a reasonable sum against a claimant as an attorney's fee for the insurer's attorney in defense against a claim that was in some respect fraudulent or so excessive as to have no reasonable foundation. To the extent that personal or property protection insurance benefits are then due or thereafter come due to the claimant because of loss resulting from the injury on which the claim is based, such a fee may be treated as an offset against such benefits; also, judgment may be entered against the claimant for any amount of a fee awarded against him and not offset in this way or otherwise paid.

"The decision to award or deny attorney fees under MCL 500.3148(2) is reviewed for an abuse of discretion." *Gentris v State Farm Mut Auto Ins Co*, 297 Mich App 354, 361; 824 NW2d 609

---

[2] MCL 500.3148(2) was subsequently amended by 2019 PA 21, effective June 11, 2019. The current version of the section provides:

> A court may award an insurer a reasonable amount against a claimant as an attorney fee for the insurer's attorney in defending against a claim that was in some respect fraudulent or so excessive as to have no reasonable foundation. A court may award an insurer a reasonable amount against a claimant's attorney as an attorney fee for defending against a claim for which the client was solicited by the attorney in violation of the laws of this state or the Michigan rules of professional conduct.

(2012). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id.* (internal citation and quotation marks omitted). "However, for purposes of MCL 500.3148(2), a trial court's findings regarding the fraudulent, excessive, or unreasonable nature of a claim should not be reversed on appeal unless they are clearly erroneous." *Id.* (internal citation and quotation marks omitted). "A decision is clearly erroneous when a reviewing court is left with a firm and definite conviction that a mistake was made by the lower court." *Id.*

Essentially, defendant argues that the jury's finding of fraud entitled it to attorney fees under MCL 500.3148. We disagree.

> The language of MCL 500.3148(2) indicates that a court may exercise its discretion by awarding attorney fees to an insurer, but only if a claim was in some respect fraudulent or so excessive as to have no reasonable foundation. *The statute does not mandate that the court award attorney fees on a finding of fraud or excessiveness, nor does the statute require the court's findings to be based on the jury's verdict.* However, the findings must be able to survive review under the clearly-erroneous standard. Further, an award of attorney fees under the statute can be entered by a court on the basis of either fraud standing alone or excessiveness with no reasonable foundation or, of course, on the basis of both factors. [*Id.* at 361-362 (emphasis added).]

As noted previously, the parties presented conflicting evidence on the question of fraud. The trial court was aware of the jury's finding of fraud, but believed that the jury might have been influenced by plaintiff's memory lapses. The trial court found that plaintiff's preexisting conditions were aggravated by the accident, which caused her serious suffering. The trial court was also impressed that plaintiff's claims for personal, nonmedical benefits, were not excessive, and that plaintiff did not attempt to take advantage of attendant-care benefits or transportation benefits. Although the trial court's decision is inconsistent with the jury's verdict, MCL 500.3148(2) does not require the court's findings to be based on the jury's verdict. The trial court's decision was supported by the evidence, and we are not left with a definite and firm conviction that it made a mistake. Accordingly, we conclude that the trial court's decision not to award attorney fees under MCL 500.3148(2) was not outside the range of reasonable and principled outcomes.

Defendant also argues that the trial court erred by refusing to award attorney fees and costs under MCR 2.114,[3] MCR 2.625, and MCL 600.2591. Again, we disagree. These authorities allow the trial court to impose sanctions on a party or attorney who brings a frivolous lawsuit, i.e., one that is devoid of legal merit. As noted already, the conflicting evidence

---

[3] MCR 2.114 has been repealed, effective September 1, 2018. See 501 Mich, Advance Sheets No. 3, cxxxvii (2018). Former MCR 2.114 has been substantially relocated to current MCR 1.109(E).

presented at trial would have supported either party's position.  Therefore, the trial court did not err by declining to impose attorney fees under these authorities.

Affirmed.


/s/ Amy Ronayne Krause
/s/ Patrick M. Meter
/s/ Cynthia Diane Stephens