*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

IVAN LEWIS MANN,

Defendant-Appellee.

UNPUBLISHED
January 15, 2026
9:59 AM

No. 376533
Jackson Circuit Court
LC No. 23-004086-FH

Before: SWARTZLE, P.J., and GARRETT and WALLACE, JJ.

PER CURIAM.

The prosecution filed a criminal complaint charging defendant, Ivan Lewis Mann, with one count of possession with intent to deliver 1000 or more grams of a mixture containing the controlled substance, Fentanyl, contrary to MCL 333.7401(2)(a)(*i*), following a traffic stop. The trial court granted defendant's motion to suppress evidence found during the search of defendant's vehicle. The prosecution now appeals by leave granted.[1] We reverse.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This interlocutory appeal stems from a search of defendant's Chevrolet Trailblazer sport utility vehicle (SUV) following a traffic stop. A Michigan State Police (MSP) trooper recorded the traffic stop and subsequent search through his worn body camera and his patrol vehicle's dash-camera.

As indicated in the body camera footage, the trooper began the traffic stop by questioning why defendant's exhaust was so loud, i.e., did the vehicle have a dual pipe exhaust or was there or a hole in it? Although several words at the outset of defendant's response cannot be heard due to background road noise, he is heard to respond, "No. That's just how it is." Defendant provided his Michigan identification card to the trooper and explained that he was in the process of getting

---

[1] *People v Mann*, unpublished order of the Court of Appeals, entered September 8, 2025 (Docket No. 376533).

his driver's license back. The trooper asked defendant if the vehicle was registered in his name, and defendant responded that it was a company vehicle registered under the name of his employer. The trooper inquired if defendant had any marijuana, crack, coke, methamphetamine, heroin, knives or guns in the vehicle, and defendant replied that he did not. The trooper asked "You wouldn't have any issues with me taking a look if I was worried about anything?" Defendant verbalized an unintelligible response and gestured at the glovebox. The trooper stated, "You wanna open it? You can go ahead," and defendant opened the glovebox and moved its contents around for the trooper to see. The trooper then stated "Okay," defendant closed the glovebox and the trooper continued to question him. The trooper then asked defendant if he had ever been arrested before, and defendant responded that he had previously been arrested for drug-related charges more than ten years earlier.

The body camera footage indicates that, after investigating defendant's identity via a Law Enforcement Information Network (LIEN) search on the computer in his patrol vehicle, the trooper approached defendant's driver's side window and rapidly informed him:

> Alright man, so, you've been cool with me, I do appreciate it. Okay, we'll get everything figured out about the license. Just because you did say the prior drug activity. It's been years. You said you had no idea, er, no issues with me just taking a look real quick, make sure nothing's in there and uh we'll get everything all figured out, okay? Um, I do ask uh just, when you step out, y'mind, just gonna pat your waistband, make sure there's no gun or anything. Appreciate ya.

Defendant made a brief, ambiguous gesture lifting his right arm and hand as the trooper made this statement and did not otherwise audibly or visibly respond, other than to step out of the vehicle, raise his arms and submit to a pat-down search, and step to the back of the vehicle. The body camera footage then depicts the trooper conducting a thorough search of the entire vehicle, including the engine compartment. While searching the rear cargo area of defendant's SUV, the trooper forced the corner of the cover of the spare tire compartment to open slightly and questioned defendant on how to open it fully. Defendant replied that he had never opened it before. The trooper forced the compartment open and located a black bag wrapped in clear plastic containing contraband. Defendant was arrested and charged, as stated earlier.

At a probable-cause hearing, the trooper testified that, after he conducted the LIEN search, he approached the driver's side window and "asked for consent to search the car": "To me[,] [defendant] acknowledged, kind of rolls his arms and nodded his head, [and] got out of the car." The trooper testified that he conducted a search based on this claimed consent, "as well as I would have to do an inventory search due to towing the vehicle [because] there's no legal driver within that vehicle." The trooper explained that, during this search, he located the spare tire compartment and that the clip or latch for opening that compartment was broken off. After prying the compartment open a little bit, he could see that a black bag was in there, whereupon he reached in and felt what he believed to be a brick of narcotics. He then forced open the compartment and removed a brick wrapped in cellophane that ultimately was confirmed to be approximately 2000 grams of Fentanyl.

Following his bindover to the trial court on his count of felony possession with intent to deliver, defendant filed a motion to suppress the evidence obtained during the search of the vehicle

based upon the traffic stop being unlawful and there being no valid exception to the warrant requirement justifying the search. Following a July 26, 2024 hearing, the trial court entered a September 17, 2024 order finding that the traffic stop and subsequent arrest "were founded on reasonable suspicion and lawful." Defendant filed an application for leave to appeal from this ruling. This Court's order denying that application included the following concurrence:

> [I] concur[] in the denial of leave. I write separately to note that Mr. Mann challenges the search of his vehicle in Issue I(c). However, a review of the trial court's September 18, 2024 order appears to show the judge made no ruling on the validity of the search. The trial court issued that order finding the traffic stop and Mr. Mann's subsequent arrest lawful on the basis of the testimony given by Trooper Williams at the suppression hearing. The judge made no ruling on the merits of Mr. Mann's written challenge to the validity of the search. There being no ruling for this Court to review, this matter is prematurely before this Court. [*People v Mann*, unpublished order of the Court of Appeals, entered February 7, 2025 (Docket No. 372791) (YOUNG, J., concurring).]

Considering this concurring statement, a May 16, 2025 evidentiary hearing was held on defendant's motion to suppress to address the issue of the validity of the search. However, the parties did not present any additional witnesses or testimony regarding the constitutionality of the search of defendant's vehicle at that time. Instead, the parties agreed to the trial court reviewing the evidence that was presently in the record for its ruling: the preliminary examination transcript, the body camera and dash-camera footage, the testimony from the July 26, 2024 hearing on defendant's motion to suppress, defendant's application for leave to appeal and the prosecution's answer thereto, and this Court's order denying that application. The trial court thereafter issued a June 16, 2025 order granting defendant's motion to suppress on the issue of the validity of the search, reasoning that defendant limited the scope of his consent to the glovebox, and that, "[w]hile there was some limited consent to search[,] that seemed based more on acquiescence to lawful authority than full informed consent to search the [d]efendant's vehicle." While the trial court noted that "an inventory search might have been the best avenue for the State Police to conduct a lawful search of the [d]efendant's vehicle," it conducted no analysis of this alternative. This Court then granted the prosecution's subsequent delayed application for leave to appeal from this order.

The prosecution now argues on interlocutory appeal that the trial court erred by granting defendant's motion to suppress evidence. The prosecution requests a reversal of the trial court's June 16, 2025 order, arguing that defendant consented to a search of his entire vehicle and that the search was likewise a valid inventory search.

## II. STANDARD OF REVIEW

We review the trial court's findings of fact at a suppression hearing for clear error. *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009). We will affirm the trial court's findings unless we are left with a definite and firm conviction that a mistake was made. *People v Mazzie*, 326 Mich App 279, 288-289; 926 NW2d 359 (2018). However, a trial court's ultimate decision on a motion to suppress is reviewed de novo. *Hyde*, 285 Mich App at 436. Additionally, "[w]e review de novo whether the Fourth Amendment was violated and whether an exclusionary rule applies." *Id*.

## III. ANALYSIS

"Both the United States and Michigan Constitutions guarantee the right against unreasonable searches and seizures." *People v Beuschlein*, 245 Mich App 744, 749; 630 NW2d 921 (2001). See also US Const, Am IV; Const 1963, art 1, § 11. "Generally, evidence obtained in violation of the Fourth Amendment is inadmissible at trial." *People v Hughes*, 339 Mich App 99, 110; 981 NW2d 182 (2021). "As a general rule, searches conducted without a warrant are per se unreasonable under the Fourth Amendment unless the police conduct falls under one of the established exceptions to the warrant requirement." *Beuschlein*, 245 Mich App at 749. "At a suppression hearing, the prosecution has the burden of showing that the search and seizure were justified by a recognized exception to the warrant requirement." *People v Malone*, 180 Mich App 347, 355; 447 NW2d 157 (1989).

Consent searches are a justified exception to the warrant requirement "because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." *Florida v Jimeno*, 500 US 248, 250-251; 111 S Ct 1801; 114 L Ed 2d 297 (1991). "The consent exception permits a search and seizure if the consent is unequivocal, specific, and freely and intelligently given." *People v Mahdi*, 317 Mich App 446, 460; 894 NW2d 732 (2016). However, an individual may limit the scope of or revoke their consent. *Id*. at 461. The scope of an individual's consent is measured under an objective reasonableness standard, assessing what the typical reasonable person would have understood from the exchange between the police and suspect. *People v Frohriep*, 247 Mich App 692, 703; 637 NW2d 562 (2001). Therefore, a trial court may find that a consent search was unreasonable if the scope of the search exceeded the scope of defendant's consent. *People v Mead*, 503 Mich 205, 216; 931 NW2d 557 (2019). It is the prosecution's burden to prove that consent was "freely and voluntarily given." *Id*., quoting *Bumper v North Carolina*, 391 US 543, 548; 88 S Ct 1788; 20 L Ed 2d 797 (1968).

An inventory search is another exception to the warrant requirement. *People v Swenor*, 336 Mich App 550, 565; 971 NW2d 33 (2021).

> Standardized inventory searches, specifically, serve the legitimate governmental interests of preventing police from stealing the arrested person's property, deterring false claims of theft, and protecting people from possibly dangerous contents. We hold that, in order to establish that an inventory search is reasonable, the prosecution must establish that an inventory-search policy existed, all police officers were required to follow the policy, the officers actually complied with the policy, and the search was not conducted in bad faith. Whether the policy is or is not in writing should not itself be dispositive of the constitutional question. [*Id*. at 567-568 (citation omitted).]

"[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." *Florida v Wells*, 495 US 1, 4; 110 S Ct 1632; 109 L Ed 2d 1 (1990). Likewise, "[t]he individual police officer must not be allowed so much latitude that inventory searches are turned into a purposeful and general means of discovering evidence of crime." *Id*. (quotation marks and citations omitted).

"The inevitable discovery doctrine . . . permits the admission of evidence obtained in violation of the Fourth Amendment if it can be shown by a preponderance of the evidence that the items found would have ultimately been obtained in a constitutionally accepted manner." *Hyde*, 285 Mich App at 439-440. However,

[t]hree concerns arise in the inevitable discovery analysis: (1) whether the legal means are truly independent, (2) whether both the use of the legal means and the discovery by that means are truly inevitable, (3) and whether the application of the inevitable discovery doctrine provides an incentive for police misconduct or significantly weakens Fourth Amendment protections. [*Id*. at 440.]

In the present case, there is no reason to doubt the reasonableness of the trooper's search of defendant's glovebox because defendant visibly gestured to it and opened it in response to the trooper asking: "You wouldn't have any issues with me taking a look if I was worried about anything?" and "You wanna open it? You can go ahead." See *Jimeno*, 500 US at 250-251. However, as explained below, we need not decide whether the trial court clearly erred by finding that defendant's consent to search his vehicle was limited in scope to the vehicle's glovebox. See *Mahdi*, 317 Mich App at 461.

We agree with the prosecution's claim that the evidence found in defendant's spare tire compartment would have inevitably been discovered during an inventory search. The prosecution provided testimony at the preliminary examination indicating that the MSP had an inventory-search policy and that the trooper complied with this policy in the search of defendant's vehicle, so as to demonstrate that the purported inventory search was conducted in good faith and not a mere "ruse for a general rummaging in order to discover incriminating evidence." *Wells*, 495 US at 4; *Swenor*, 336 Mich App at 568. In *Wells*, the defendant was arrested by the Florida Highway Patrol (FHP) during a traffic stop and his vehicle was impounded. During an inventory search, police found a locked suitcase, which they opened, and which contained a considerable amount of marijuana. The United State Supreme Court affirmed the Florida Supreme Court's finding that the absence of any FHP policy on the opening of containers meant that the search of the suitcase was not sufficiently regulated to satisfy the Fourth Amendment as it pertained to an inventory search. In the present case, the prosecution provided the court with testimony indicating that the trooper could not allow defendant to drive away in the vehicle because he could not legally drive it. Further, testimony indicated that, according to MSP policy, the trooper could not leave defendant's vehicle on the side of the freeway; instead, the vehicle would have to be towed, which is why the trooper conducted an inventory search. Based on this evidence, the preponderance of the evidence indicates that discovery of narcotics in a locked compartment in defendant's trunk was "truly inevitable." *Hyde*, 285 Mich App at 439-440.

In sum, under the facts of this case, we hold that the trial court erred by granting defendant's motion to suppress evidence discovered during the search of his vehicle because the evidence was not obtained in violation of defendant's search and seizure rights under the United States and Michigan Constitutions. US Const, Am IV; Const 1963, art 1, § 11; *Beuschlein*, 245 Mich App at 749. The prosecution established that the search of defendant's vehicle was justified under the inventory-search exception to the warrant requirement. See *Malone*, 180 Mich App at 355. Therefore, the evidence obtained by way of the search is admissible at trial. See *id*. at 355-357.

We reverse the order of the trial court granting defendant's motion to suppress evidence found during the search of defendant's vehicle and remand for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Kristina Robinson Garrett
/s/ Randy J. Wallace